573 So.2d 472 (1991)
In re MEDICAL REVIEW PANEL OF Lucinda A. HOWARD.
No. 89-C-2928.
Supreme Court of Louisiana.
January 22, 1991.
Israel M. Augustine, Augustine & Bagert, New Orleans, for applicant.
Robert D. Ford and Franklin D. Beahm, Thomas Hayes & Beahm, New Orleans, for respondent.
LEMMON, Justice[*].
The issue in this case is whether plaintiff's medical malpractice claim against certain *473 defendants for causing the wrongful death of her husband is barred by prescription.
Dr. R. Cailouette was the emergency room physician on duty at Jo Ellen Smith Hospital on September 26, 1985 when plaintiff's husband was admitted to the hospital after sustaining multiple stab wounds. Dr. Cailouette provided initial treatment of the wounds for about two hours. Another physician subsequently performed emergency surgery, but the patient died the next day.
On April 9, 1986, plaintiff filed a claim against the hospital with the Commissioner of Insurance pursuant to La.Rev.Stat. 40:1299.47. She alleged that her husband's death was caused by the negligence of employees of the hospital or of other persons for whom the hospital was responsible.
Inasmuch as the Medical Malpractice Act does not require responsive pleadings by a qualified health care provider against whom a claim is filed with the Commissioner, the hospital did not admit or deny any of the allegations of plaintiff's pleading, but did initiate discovery by filing interrogatories and requests for production and by taking plaintiff's deposition. The medical review panel required by the Act was eventually constituted, the last member being selected on June 29, 1987.
On November 4, 1987, the hospital submitted a memorandum to the panel. Service of the memorandum on plaintiff notified her for the first time that the doctor who undertook her husband's treatment when he presented himself to the hospital in the emergency room was not the hospital's employee, but rather was an employee of Keith Van Meter & Associates, a medical group which had contracted with the hospital to provide professional services in the hospital's emergency department.[1] The hospital, asserting that the only hospital employees involved in the case were the nurses in the emergency room and in the surgical and intensive care units, contended that there was no evidence of negligence by any of these employees.
The medical review panel ruled on January 12, 1988 that the evidence did not establish any deviation by employees of the hospital from the appropriate standard of care.
On January 25, 1988, plaintiff filed a supplemental claim with the Commissioner, requesting that the medical review panel conduct a further review of the responsibility of Keith Van Meter & Associates and a named physician in connection with the death of her husband. The claim asserted that both Van Meter and the doctor were qualified health care providers and that the doctor was the emergency doctor assigned to the hospital by Van Meter on the night of the alleged malpractice described in the original claim.[2]
Van Meter filed an exception of prescription, which was maintained by the trial court.
On appeal the intermediate court affirmed the dismissal of the claim. 554 So.2d 87. The court rejected the applicability of the doctrine of contra non valentem agere nulla currit praescriptio, noting that plaintiff made no effort to discover the indentity of the employer of the emergency room doctor and that the hospital had no obligation to disclose its contractual relationship with Van Meter.[3]
*474 We granted certiorari to review the correctness of the decisions of the lower courts. 558 So.2d 1136.
The periods of limitation for filing medical malpractice claims are provided in La.Rev.Stat. 9:5628, which requires an action for damages against doctors and hospitals arising out of patient care to be brought (1) within one year of the date of the act or omission, (2) within one year of the date of discovery of the act or omission, or (3) at the latest, in all events, within three years of the date of the act or omission.[4]Crier v. Whitecloud, 496 So.2d 305 (La.1986). Thus, the statute itself recognizes the discovery rule embodied in the contra non valentem doctrine, at least when the action is filed within one year of the discovery and within three years of the act or omission.
In the present case the claim against Van Meter was filed within one year of the date plaintiff claims she discovered that Van Meter was the true employer of the emergency room doctor whose identity was unknown to plaintiff at the time of the claim, as well as within three years of the act or omission which allegedly caused plaintiff's husband's death. The claim filed against Van Meter therefore clearly fits within the statutory time periods, unless an earlier date of discovery applies.
The key inquiry in most contra non valentem cases is the commencement date of the one-year prescriptive period under the discovery rule. The doctrine itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription.
Constructive knowledge sufficient to commence the running of prescription requires something more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La. 1979).
In determining the date of commencement of prescription in "should have discovered" cases, this court in recent cases following Cordova and Young has focused on the reasonableness of the claimant's action or inaction. In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), a redhibition action, the seller of a house knew of an engineering report that noted structural damage, but did not disclose this information to the buyer, giving him instead a report that stated the house was structurally sound. Within one year of the sale, the sunken den flooded. Although removal of the carpet revealed cracks in the den floor covered by a sealant, the insurance adjuster attributed the flooding to a leak in the flashing at the chimney. More than one year after the sale, the den again flooded after a heavy rain, and the buyer discovered water seeping in though the foundation. This court, noting that because of the seller's bad faith the buyer had one year from the discovery of the redhibitory vice to bring the action, held that the claimant, although aware of the flooding, did not have a reasonable basis for knowledge of his cause of action in redhibition until he learned of the cracks in the foundation.[5]
*475 In Griffin v. Kinberger, 507 So.2d 821 (La.1987), a medical malpractice case, the mother of an infant noticed the child's eye problems, but the doctor told her the condition was the natural and expected consequence of the necessary administration of oxygen to a premature child at birth. Eighteen years later the mother filed suit after reading a newspaper article about a child's blindness caused by a Florida doctor's negligent treatment with oxygen during a premature birth. This court held that until plaintiff was alerted by the newspaper article that she may have a cause of action and should seek further information, she had no reason to relate the eye symptoms to any malpractice, especially when another doctor told the eighteen-year old mother with a sixth grade education that the symptoms were to be expected.
In the present case plaintiff reasonably believed that when her husband presented himself for treatment at the hospital, he was treated by employees of the hospital. While she could have utilized discovery to determine the names of the health care providers, it was not necessary for her to do so if they were hospital employees, which plaintiff reasonably believed to be the case. Moreover, plaintiff's reasonable belief in this regard was reinforced when the hospital, sued six months after the incident, undertook discovery in an effort to defend the claim without denying vicarious responsibility for the emergency room physician who, according to the hospital's own records, administered the critical first two hours of treatment. While Van Meter did not itself mislead plaintiff, it joined with the hospital in setting up the circumstances from which plaintiff drew her reasonable conclusion about the employment relationship between the emergency room doctor and the hospital. Plaintiff was further lulled into believing inquiry into the relationship between the hospital and the emergency room doctor was unnecessary by the peculiar provisions of the Medical Malpractice Act which excused the health care provider, sued six months before prescription ran, from revealing the inaccuracy of the plaintiff's reasonable belief as to the employment relationship until the normal prescriptive period had fully accrued.[6]
Under the particular circumstances of this case we conclude that plaintiff's belief that the hospital employed the emergency room doctor was reasonable and the plaintiff's ignorance of Van Meter's employment relationship with the doctor, a fact necessary for her to assert her cause of action against Van Meter, was not willful or inexcusably negligent. Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). The doctrine of contra non valentem applies in this case to suspend the running of prescription until plaintiff was made aware that Van Meter, and not the hospital, was vicariously responsible for the torts of the emergency room doctor.
Accordingly, the judgments of the lower courts are reversed, the exception of prescription is overruled, and the case is remanded for further proceedings.
WATSON, Justice, concurring.
Although I agree with the majority that the exception of prescription should be overruled, I concur to note that the factual question of whether the hospital is responsible for any negligence by the emergency room physicians has not been decided by a trier of fact. See Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986).
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] Under the contract Van Meter recruited, scheduled and supervised doctors who operated the emergency department around the clock.
[2] On March 8, 1988, plaintiff corrected the amended claim to name Dr. Cailouette as the emergency room doctor who allegedly caused her husband's death.
[3] In the court of appeal plaintiff also urged that the Medical Malpractice Act's lack of a requirement of a prompt response by the health care provider, while at the same time holding the malpractice victim to strict rules of prescription, denied her due process and equal protection of the laws. The court of appeal refused to consider this contention because plaintiff had not raised unconstitutionality in the trial court. While we do not necessarily agree that an appellate court should not consider a constitutional issue not raised in the trial court when no evidence is necessary and the opposing party is not prejudiced by the failure to raise the issue below, we do not reach the constitutional issue in deciding the present case.
[4] The first two periods are clearly prescriptive periods, as contrasted to peremptive periods. The major difference is that a prescriptive period may be suspended or interrupted, while a peremptive period may not. La.Civ.Code art. 3452, 3458 and 3461.
[5] The court noted that the language in Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970), that "whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead, and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription" was an incomplete definition of the kind of notice that commences the running of prescription.
[6] If the present case had been initiated by petition filed in the district court under the Code of Civil Procedure, the original defendant (hospital) would have been required to admit or deny the allegations of the petition as to the hospital's vicarious responsibility for the emergency room personnel.