599 So.2d 816 (1992)
Benjamin MATHERNE and Gertrude Champagne Matherne
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Larry L. Robertson, Mike Jambon, Jude J. Guidry and Robert Arabie.
No. CA 90 1210.
Court of Appeal of Louisiana, First Circuit.
March 23, 1992.
Writ Denied June 19, 1992.
Ashley Bruce Simpson, Lockport, for plaintiffs-appellants Benjamin Matherne and Gertrude Champagne Matherne.
Jerry H. Schwab, Schwab & Butler, Houma, for defendants-appellees State Farm Mut. Auto. Ins. Co., Larry L. Robertson, Jude J. Guidry and Robert Arabie.
Before LOTTINGER, EDWARDS, CARTER, FOIL and GONZALES, JJ.
GONZALES, Judge.
This lawsuit arose following an automobile accident. Plaintiffs originally sued the tortfeasor, Robert Arabie (whose fault was stipulated) and his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), a State Farm claims adjuster, Larry L. Robertson, and two State Farm insurance agents, Mike Jambon and Jude Guidry. State Farm was also sued in its capacity as plaintiffs' uninsured motorist carrier. Mike Jambon was dismissed on *817 plaintiffs' motion, without prejudice. Trial was had on the issue of liability alone. Thereafter, the trial court sustained an exception pleading the objection of res judicata as to Robert Arabie and State Farm (in its capacity as Arabie's insurer). The exception pleading the objection of prescription filed by the remaining defendants was sustained and plaintiffs' petition was dismissed. Plaintiffs have appealed.
We reverse in part, finding merit in Mrs. Matherne's argument of contra non valentem.[1]

FACTS
Mrs. Gertrude Matherne was injured on August 17, 1986, when she was involved in an automobile accident with Robert Arabie, whose fault was stipulated. Both Mrs. Matherne's automobile and that of Mr. Arabie were insured with State Farm.[2] The accident was reported immediately to each party's respective insurance agent.
On August 21, 1986, Larry Robertson, the State Farm claims adjuster for that area contacted Mrs. Matherne. Mr. Robertson testified in court that he informed Mrs. Matherne that State Farm accepted liability and assured her reimbursement for damages to her car, medical bills, lost income, and a settlement for inconvenience, pain and suffering would be forthcoming. Specifically, Mr. Robertson testified:
[W]hen I contacted them, my initial procedure is to tell them who I am. That we accepted liability and we know they have damage to their vehicle and we will take care of the damage to their vehicle. If they need a rental car, they can get a rental car. I'll help them get a rental car while their vehicle is in the shop being repaired. I let them know that we will pay for any medical bills. If she's employed, we'll pay for any lost income. That eventually we will make a settlement with them for the inconvenience, pain and suffering she's gone through. I try to let them know exactly what we will do because a lot of people [have] never been involved in an automobile accident and have no idea what they're supposed to do to collect their damages. And some people are hesitant about asking for money for their car. So I try to let them know right off exactly what we will do.
On August 22, 1986, State Farm paid the Mathernes for the damages to their car in the amount of $1,124.46. Additionally, reimbursement for a $60 bowling ball damaged in the accident was made. On October 22, 1986, State Farm paid $105.10 to plaintiffs for a car rental. A settlement for bodily injury was offered in October in the amount of $300, and rejected by plaintiffs. In February of 1987, plaintiffs signed a settlement agreement releasing Mr. Arabie and State Farm as his insurer for $800.00 plus an "open end" provision for medical bills up to $5,000.00.
State Farm paid Mrs. Matherne's medical bills under Mr. Arabie's insurance policy through July 1987, at which time the $5,000.00 available under the settlement agreement had been exhausted. Mr. Robertson testified that he told the Mathernes when the $5,000.00 was used up, that they did have medical payment coverage on their own policy out of which State Farm would pay any other bills. Mr. Robertson testified that he "wanted to assure them [the Mathernes] that we'd still pay their medical bills." State Farm continued to pay Mrs. Matherne's medical bills and on May 24, 1988, Mr. Robertson noted in his file: "Claimant getting me P & S [physician's and surgeon's] report. Claimant may make "U" [uninsured motorist] claim under own policy. Claimant still having back problems." Mr. Robertson's file had the following notation on June 21, 1988:
We have P & S report from doctor on Gertrude Matherne. He said that she had cervical strain and ruptured disc as a result of the accident of August 17th, *818 1986. The claimant's [sic] still seeing doctor. We settled under Robert Arabie's liability policy for $800 and then paid $5,000 under his policy on an open end release. Claimant had disc surgery, anterior cervical fusion of the L5-6, C6-7 in April of 1987. Since we paid out the $5,000 under the open ended release, we have paid medical bills under Mr. Matherne's medical pay coverage policy of $25,000 limit. So far $5,000 is paid under the open ended release and $5,043.70 under Mrs. Matherne's medical coverage. I spoke to Mrs. Matherne a few days ago and asked her if she was making an uninsured motorist claim. She did not know what I was talking about. I explained the "U" coverage, uninsured motorist claim, to her and she said she would discuss it with her husband and let me know. She herself didn't know if they were making a "U" claim or not. This was by phone. Total medically paid out $10,043.70.
Mr. Robertson testified that at the time he last spoke with Mrs. Matherne, he believed that State Farm was liable to the Mathernes for the uninsured motorist coverage. In obtaining the medical reports for his files, Mr. Robertson testified that he was preparing for settlement discussions on any UM claim the Matherne's might have. Mr. Robertson stated, "if they wanted to make a claim, you know, we had no objections at all ... [if] prescription hadn't run, we could have settled with them."
Sometime in the summer of 1988, Jude Guidry, the Matherne's insurance agent was told by Mr. Matherne he was interested in making an uninsured motorist claim; Mr. Guidry passed this information along to Mr. Robertson. Several weeks later, Mr. Matherne approached Mr. Guidry again with this information, and Mr. Guidry notified Gary Suer, Mr. Robertson's superintendent. Gary Suer testified that he spoke to Mr. Matherne at Jude Guidry's request, in June or July of 1988. Mr. Suer testified that regarding his claim, Mr. Matherne wanted something in writing to guarantee that State Farm would make his wife's back and neck pain free. Mr. Suer further testified that when he asked Mr. Matherne whether he intended to make a UM claim, Mr. Matherne stated that he felt State Farm had been more than fair to him and he did not want to collect any more from them. Mr. Suer warned him that in the event he wanted to make such a claim, it would prescribe soon. Shortly after August 17, 1988, Mr. Matherne called Mr. Suer again, and requested approximately $75,000.00 in settlement of their UM claims. After verifying that no suit had been filed, Mr. Suer sent a letter, in October of 1988, denying coverage on the basis of prescription.

SUSPENSION OF PRESCRIPTION
Although prescription for an uninsured motorist claim runs in two years under La.R.S. 9:5629, prescription may be suspended under the doctrine of contra non valentem. See In re Medical Review Panel of Howard, 573 So.2d 472 (La. 1991). Plaintiffs argue that under the doctrine of contra non valentem prescription was suspended because of the representations made by State Farm which prevented them from bringing suit.
Contra non valentem is a jurisprudentially created exception to Civil Code article 3467 stating that "[p]rescription runs against all persons unless exception is established by legislation." See Corsey v. Louisiana Department of Corrections, 375 So.2d 1319 (La.1979). The Louisiana Supreme Court has recognized four categories of situations in which the doctrine of contra non valentem can be applied: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Plaquemines Parish *819 Commission Council v. Delta Development Company, 502 So.2d 1034 (La.1987); Gover v. Bridges, 497 So.2d 1364 (La.1986); Corsey, 375 So.2d at 1321. The third category as enumerated in Corsey encompasses "an innocent plaintiff being lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights." See Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1st Cir.1970) (cited with approval in Corsey, 375 So.2d at 1322, n. 8). See also Reed v. General Motors Corporation, 400 So.2d 919 (La.App. 1st Cir.), writ denied, 406 So.2d 625 (La.1981); Brown v. State Department of Corrections, 354 So.2d 633 (La.App. 1st Cir.1977).
The testimony of defendant's employee, Mr. Robertson, was undisputed; he testified Mrs. Matherne was assured that she would be compensated for her pain and suffering. We believe the trial court came to an erroneous legal conclusion given the facts presented herein. The representations of the State Farm adjuster were sufficient to constitute "lulling" as contemplated under the contra non valentem jurisprudence. See Nathan v. Carter, 372 So.2d 560 (La.1979). We find no merit to Mr. Matherne's argument of contra non valentem regarding his claim for loss of consortium; no representations were made by State Farm to Mr. Matherne regarding payment of loss of consortium damages.
When contra non valentem is applicable, the running of prescription is suspended until the plaintiff discovers or should have discovered the facts upon which his or her cause of action is based. In re Medical Review Panel of Howard, 573 So.2d at 474; Lott v. Haley, 370 So.2d 521 (La.1979). When plaintiff has been lulled into inaction by a defendant's misrepresentation, prescription is suspended until plaintiff is made aware of the truth of the matter. See In re Medical Review Panel of Howard, 573 So.2d at 475.
Mrs. Matherne was informed on August 21, 1986, that all of her damages would be paid by State Farm. It was not until October of 1988 that she discovered State Farm would not honor all of her claims. Thus, contra non valentem applies to suspend prescription during that time period. Consequently, Mrs. Matherne's suit filed on November 14, 1988, was timely.
For the reasons given herein, the judgment of the trial court sustaining the exception pleading the objection of prescription is reversed as to Mrs. Matherne and affirmed as to Mr. Matherne, and, the case is remanded for further proceedings consistent with the foregoing. All costs of this appeal are to be borne by appellees herein.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
LOTTINGER, J., concurs in part, dissents in part and assigns written reasons.
FOIL, J., concurs in part and dissents in part for the reasons assigned by LOTTINGER, J.
LOTTINGER, Judge, concurring and dissenting.
I concur in the affirmation of the dismissal of Mr. Matherne's claim and respectfully dissent in the reversal of the dismissal of Mrs. Matherne's claim.
In reversing the judgment of the trial court, the majority has concluded that Mrs. Matherne was lulled into a course of inaction based on the facts presented.
The trial court found as fact that certain information was given to Mrs. Matherne concerning U.M. coverage and that based on all the facts "the defendants did not lull the Mathernes into a state of inaction." In support of its reversal, the majority cites Nathan v. Carter, 372 So.2d 560 (La.1979), a case wherein "defendants threatened Mrs. Nathan with termination of her compensation benefits if she ever contacted an attorney." Id. at 563. Facts of such extreme are not present in the case sub judice, nor does the majority attempt to show where the trial judge was manifestly *820 erroneous or clearly wrong in his factual findings.
Therefore, I would affirm the trial court based on its excellent reasons for judgment.
NOTES
[1] We pretermit plaintiffs' other assignments of error.
[2] Mr. Arabie's policy had liability limits of $50,000.00. The Matherne policy had a medical payment provision with $25,000.00 in coverage and uninsured motorist coverage of $100,000.00.