642 So.2d 693 (1994)
Fred B. MILEY, et al.
v.
CONSOLIDATED GRAVITY DRAINAGE DISTRICT NO. 1, et al.
No. 93 CA 1321.
Court of Appeal of Louisiana, First Circuit.
September 12, 1994.
*694 Thomas J. Hogan, Jr., Hammond, for plaintiffs-appellants Fred B. and Jean Miley.
Dickie Patterson and Reginald J. McIntyre, Hammond, for defendant-appellee Consol. Gravity Drainage Dist. No. 1.
Glen Scott Love, Baton Rouge, for defendant-appellee Louisiana Ins. Guar. Ass'n.
Michael Hart, Baton Rouge and Michael Fontenot, Lafayette, for defendant Mt. Hawley Ins. Co.
Henri Wolbrette, III, New Orleans, Robert Picou, Houma, Patrick Berrigan, Slidell, Leonard L. Levenson, James J. Durio, and David Cressy, New Orleans, for defendant Affolter Contracting Co.
James B. Frederick, Jr., Baton Rouge, for defendant Louisiana Dept. of Transp. and Development.
Before CRAIN, LeBLANC, FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
This is an action seeking recovery for damages to immovable property and for personal injuries caused by improvements made to a drainage canal. Plaintiffs appealed adverse *695 judgments of the trial court maintaining peremptory exceptions pleading the objection of prescription filed by defendants. We affirm in part, reverse in part, and remand.

FACTS
The pleadings and depositions in the record disclose the following facts. Plaintiffs, Fred and Jean Miley (the Mileys), owned property adjacent to the W-1 Main Canal, which is also known as the Yellow Water River Diversion Canal (the Yellow Canal), in Tickfaw, Louisiana. The Mileys had an upholstery shop, a small house and a mobile home on the property. Mr. Miley operated the upholstery business and the Mileys leased out the other two structures.
Defendant, Consolidated Gravity Drainage District No. 1 for the Parish of Tangipahoa (the District), is a board or commission of Tangipahoa Parish, a political subdivision of the State of Louisiana. The District, which operated and maintained the Yellow Canal, voted to engage in a public works project involving the canal. The main portion of this public works project was the clearing, deepening, and widening of the Yellow Canal for purposes of improving water drainage from the north end of Tangipahoa Parish through the south end of the parish.
In 1985, the District contracted with defendant, Affolter Contracting Company (Affolter), to clean and dredge the Yellow Canal. The District assured the State that it had acquired all necessary rights of way. The Mileys, however, contend that they did not give the State a right of way.
When Affolter's dragline appeared in the Yellow Canal near the Mileys' property, Mrs. Miley observed the machine removing large quantities of earth from her side of the canal bank, contrary to assurances she had been given concerning the scope of the work.
Mrs. Miley contacted the superintendent of the District, Newman Harper (Harper).[1] The Mileys were personally acquainted with Harper and had known him for a long time. Harper assured Mrs. Miley that the District would return and stabilize the canal bank by her property. Based on personal knowledge and past experience in dealing with Harper, Mrs. Miley accepted Harper's assurances.[2]
The District completed work on the portion of the project at or near the Mileys' property in the early months of 1986, but did not return to stabilize the canal bank by the Mileys' property. Mrs. Miley, however, persisted in her attempt to have the District correct the problem. She attended board meetings, spoke to individual commissioners, and presented photographs of the damage to the District.
The Mileys allege that the following damages resulted from the District's excavation of the Yellow Canal: the canal's banks eroded severely; a small ditch on the north side of the Miley's property was left undressed and gullied out enormously; large trees were undermined and toppled; large holes appeared in the canal's bank; and the slab under the Mileys' small rent house cracked and shifted due to the declining water table in the canal bank caused by the deepening of the canal.
Two other property owners, Mark S. Lewis and John G. Teltsch (Lewis and Teltsch), also allegedly sustained significant erosion of their property as a result of the same excavation work on the Yellow Canal. The Lewis and Teltsch property was situated further downstream on the bank of the canal. The District spent approximately $5,000.00 attempting to stabilize the bank of the canal to halt erosion of the Lewis and Teltsch property, but the measures taken failed to correct the problem. When the District refused to take further corrective measures, Lewis and Teltsch filed suit against the District on October 10, 1988.
In the late spring of 1988, the District's engineer, Leey Mapes, inspected the Miley property and assured the District that it was not responsible for the damage. Thereafter, *696 the District refused to take any corrective measures with regard to the Miley property.
On April 24, 1989, the Mileys filed an original petition for damages against the District, the District's insurers, the District's contractors, and the contractors' insurers. The Mileys subsequently filed a first amending and supplemental petition naming as defendants Affolter, Louisiana Insurance Guaranty Association (substituted for the District's insolvent insurer), and the District's prior insurer, Mt. Hawley Insurance Company, in solido. A third amending and supplemental petition named Affolter's insurers and the State of Louisiana, Department of Transportation and Development (DOTD) as defendants, in solido, with the other named defendants.
The Mileys' suit was consolidated for trial with the Lewis and Teltsch suit. All defendants pleaded peremptory exceptions of prescription in the Miley case, but not in the Lewis and Teltsch case. The District pleaded the peremptory exception of prescription in its answer, alleging that prescription appeared on the face of the petition, where it was shown that the cause of action arose more than one year prior to the filing of suit.
The trial court conducted a hearing on the exceptions. By agreement of the parties, for purpose of the hearing on the exceptions only, the evidence consisted solely of the record and depositions of certain witnesses. The trial court maintained the exceptions of prescription and dismissed the Mileys' suit as to all claims and all defendants.[3]
In its written opinion for judgment in the Mileys' action against the District, the trial court found that the Mileys' original petition for damages was not filed until April 24, 1989, some three years after completion of the public works project; that prescription was clear pursuant to the provisions of LSA-R.S. 9:5624; that plaintiffs failed to prove interruption of prescription after the alleged acknowledgment by a District employee in 1986; and that the theory of "continuing tort" was not applicable to this case. In accordance with these findings, the trial court, on December 16, 1992, signed a judgment in favor of the District and against the Mileys.
Subsequently, the trial court issued a second supplemental opinion, finding that prescription had also run on the Mileys' claims against the remaining defendants for the reasons stated in its earlier opinion for judgment in favor of the District. Accordingly, the trial court signed a judgment on February 3, 1993 maintaining defendants' exceptions of prescription and dismissing the Mileys' action against those defendants.
The Mileys appealed the adverse judgments of the trial court, assigning the following as error:
1. The trial court erred when it held that the plaintiff had the burden of proof.
2. The trial court erred when it maintained the exception of prescription.

ASSIGNMENT OF ERROR NUMBER ONE
By way of this assignment of error, the Mileys assert that the burden of proof rested with the defendant in the instant case. We disagree. Prescription appears on the face of the petition. It is a well-settled rule that when, as in the instant case, the plaintiff's petition on its face reveals that prescription has run, the burden is on the plaintiff to show why the claim has not prescribed. See, Sun Oil Co. v. Tarver, 219 La. 103, 52 So.2d 437 (1951). Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the Mileys contend that their cause of action has not prescribed and urge this court to find reversible error.
Delictual actions are subject to a liberative prescription of one year which commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492.
*697 When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. LSA-C.C. art. 3493.
When private property is damaged for public purposes, any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works. LSA-R.S. 9:5624. However, whenever property is taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies without an expropriation proceeding, actions for compensation prescribe three years from the date of such taking. LSA-R.S. 13:5111.
As a general rule, prescription runs against all persons unless they are included in some exception established by legislation. LSA-C.C. art. 3467. However, prescription may be suspended, interrupted, or renounced. Prescription that has commenced to accrue, but has not yet run, is interrupted by the filing of suit or the acknowledgment of the right of the person against whom prescription has commenced. LSA-C.C. arts. 3462, 3464.
Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished. When presented with two possible constructions, the court should adopt the construction which favors maintaining, as opposed to barring, an action. Lima v. Schmidt, 595 So.2d 624, 629 (La.1992).
In certain limited cases, Louisiana courts have recognized that prescription may be suspended under the equitable doctrine of contra non valentem agere nulla currit praescriptio which means that prescription does not run against a person who could not bring his suit. Nathan v. Carter, 372 So.2d 560, 561 (La.1979); See, Corsey v. Louisiana Department of Corrections, 375 So.2d 1319 (La.1979). Contra non valentem is a jurisprudentially created exception to the general rule established by LSA-C.C. art. 3467. As recognized by the Louisiana Supreme Court, contra non valentem is applicable in four categories of situations: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Corsey v. Louisiana Department of Corrections, 375 So.2d at 1321-1322; Matherne v. State Farm Mutual Automobile Insurance Company, 599 So.2d 816, 818-819 (La.App. 1st Cir.), writ denied, 600 So.2d 648 (La.1992). The third category of situations enumerated in Corsey encompasses "an innocent plaintiff being lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights." Matherne v. State Farm Mutual Automobile Insurance Company, 599 So.2d at 819, and cases cited therein.
On appeal, the Mileys submit that, although it was their argument in the trial court that the District had acknowledged their right to recover and prescription was accordingly interrupted, the correct view is that the District's undisputed actions of assuring the Mileys that their property would be restored, and actually attempting restoration work for other similarly situated claimants, suspended prescription until the District acted contrary to its representations. For the following reasons, we find merit in part of this argument.
Our examination of the depositions taken in the instant case revealed that Mrs. Miley's testimony concerning Harper's assurances to her was undisputed and corroborated by the deposed testimony of two disinterested witnesses, Audrey Fillippello and Melvin Achord. Moreover, as borne out by the record, *698 Mrs. Miley's acceptance of Harper's assurances was not unreasonable. Harper was in a position of authority with the District. Based on Mrs. Miley's personal knowledge and past experience in dealing with Harper, she knew him to be a man of his word. Therefore, when he assured her that the District would remedy the problem, she believed him. Similarly, the District's actions regarding the Lewis and Teltsch property furnished Mrs. Miley with further proof that she could rely on Harper's assurances.
Thus, given the facts presented here, we conclude that the trial court erred in maintaining the exception of prescription in favor of the District. Harper's assurances on behalf of the District were sufficient to constitute "lulling" as contemplated under the contra non valentem jurisprudence. Matherne v. State Farm Mutual Automobile Insurance Company, 599 So.2d at 819.
When contra non valentem is applicable, the running of prescription is suspended until the plaintiff discovers or should have discovered the facts upon which plaintiff's cause of action is based. In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La.1991). When plaintiff has been lulled into inaction by a defendant's misrepresentation, prescription is suspended until plaintiff is made aware of the truth of the matter. Matherne v. State Farm Mutual Automobile Insurance Company, 599 So.2d at 819.
The Mileys had knowledge of the alleged damage to their property in March of 1986. At about the same time, Mrs. Miley contacted Harper, and he assured her that the District would return and stabilize the bank of the Yellow Canal. It was not until after Mapes' inspection of the Miley property that Mrs. Miley discovered that the District would not take any corrective measures concerning their property. Consequently, contra non valentem applied to suspend prescription during that time period. Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Similarly, prescription should not be used to force a potential plaintiff who believes that he may have a cause of action to rush to the nearest courthouse to file suit against all parties who might have caused that damage. See Jordan v. Employee Transfer Corporation, 509 So.2d 420, 423 (La.1987). When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. Jordan v. Employee Transfer Corporation, 509 So.2d at 423. Accordingly, the Mileys' suit filed on April 24, 1989 was timely insofar as the claim against the District is concerned. However, we find that contra non valentem does not apply to suspend prescription on the Mileys' claims against defendants Affolter, DOTD, and LIGA. The record is completely devoid of any evidence to establish that these defendants made any representations to the Mileys which would have lulled the Mileys into a course of inaction in the enforcement of their right as against these defendants.

CONCLUSION
For the foregoing reasons, the judgment of the trial court maintaining the peremptory exception pleading the objection of prescription is reversed as to defendant, Consolidated Gravity Drainage District No. 1 for the Parish of Tangipahoa, and affirmed as to defendants Affolter Contracting Company, Louisiana Insurance Guaranty Association, and State of Louisiana, Department of Transportation and Development. Accordingly, this case is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.
All costs of this appeal in the amount of $368.00 are assessed against defendant, Consolidated Gravity Drainage District No. 1 for the Parish of Tangipahoa.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
PARRO, J., dissents.
NOTES
[1] Mr. Miley is deaf.
[2] At one time, Harper owed the Mileys money for upholstery work which they had done for him. Before Harper could pay the debt in full, he lost his dairy farm and subsequently moved out of the area. Harper, however, continued to make small payments on the debt until he paid it in full.
[3] According to the Mileys' brief, the Lewis and Teltsch case was reassigned for trial on January 3, 1994.