737 So.2d 720 (1999)
Sarah Derrick CRUMP
v.
SABINE RIVER AUTHORITY.
No. 98-C-2326.
Supreme Court of Louisiana.
June 29, 1999.
*722 Richard P. Ieyoub, Attorney General, Henry Milling Bernstein, Counsel for Applicant.
Robert M. Davis, III, Shreveport, Counsel for respondent.
William J. Doran, Jr., Richmond, VA, Roland John Dartez, Baton Rouge, Counsel for Police Jury Association of Louisiana (Amicus Curiae).
A. J. Gray, III, Lake Charles, Counsel for Michael X. St. Martin and Virginia R. St. Martin (Amicus Curiae).
David Neale Schell, Jr., New Orleans, Counsel for Quintana Petroleum Corp., Union Oil Co. of CA, and Mid Louisiana Gas Co. (Amici Curiae).
G. William Jarman, Baton Rouge, Linda Sarradet Akchin, Prairieville, Counsel for IMC Global Inc. (Amicus Curiae).
G. William Jarman, Baton Rouge, Linda Sarradet Akchin, Prairieville, Richard Stuart Pabst, New Orleans, Counsel for Texaco, Inc. (Amicus Curiae).
CALOGERO, C.J.[*]
This negligence action involves a prescription issue, as suit was filed nearly twenty years after the plaintiff, Sarah Derrick Crump, acquired knowledge of the damage allegedly caused by the tortious conduct of the defendant, the Sabine River Authority. We granted certiorari to determine the applicability of the theory of continuing tort where the digging of a canal on the property of the defendant by a third party caused damage to the property of the plaintiff. For the following reasons, we find that the operating cause of the injury was the digging of the canal, and that it is from this activity that plaintiff's negligence cause of action arose. Because plaintiff has not established continuous tortious conduct on the part of the defendant in connection with that activity, we find that the theory of continuing tort is not applicable in this case, and therefore plaintiffs negligence action is subject to a one-year prescriptive period. So finding, we hold that plaintiff's negligence action, filed nearly twenty years after the resulting damage became apparent to the plaintiff, has prescribed.

FACTS AND PROCEDURAL HISTORY
In about 1965, the plaintiff in this case, Sarah Derrick Crump, sold eighteen acres of the sixty acres of property that she and her mother owned to the defendant, the Sabine River Authority,[1] for the development of the Toledo Bend Project. This eighteen acre portion of plaintiffs land was *723 purchased for the purpose of constructing the Toledo Bend Reservoir. Prior to the sale, and at a time when the plaintiffs tract consisted of the full sixty acres, Mc-Donald Bayou flowed through the southern portion of plaintiffs property, entering on the eastern boundary and exiting on the western boundary and following the shape of an ox-bow. At that time, plaintiffs land lay on both the north and south banks of McDonald Bayou. The land that was subsequently purchased by the Sabine River Authority was mostly that land located south of McDonald Bayou. After completion of the sale, the Sabine River Authority then leased back a portion of the purchased property to the plaintiff for her use and for her to have access to the Toledo Bend Lake. The north bank of McDonald bayou then became the south border of the lease back area, which area was adjacent to the land still owned by the plaintiff.
In about 1968, the construction of the Toledo Bend Reservoir was completed and water filled the reservoir. This allowed the plaintiff access from her property to either the Toledo Bend Reservoir or the Sabine River by way of McDonald Bayou. Plaintiff testified that, with the construction complete, she had hoped to develop her property into a mobile home park, and in 1970, she had plans and specifications drawn for that purpose. In addition, plaintiff built a boat house and performed some dredging on her property in furtherance of that same purpose.
The record reveals that on June 3, 1969, an attorney representing the plaintiff wrote a letter on the plaintiff's behalf to the Sabine River Authority stating that the owners of a neighboring piece of property, specifically R.V. Woods and Lamar Haddox, intended to use their land for a commercial fishing operation and, in furtherance of that aim, intended to apply to the Sabine River Authority for "permission to dredge out and otherwise use the creek or bayou which passes through the property leased to Mrs. Crump." Plaintiffs attorney advised that any such use of the bayou would interfere with the plaintiffs use of the property the Sabine River Authority leased to her and requested notice of any application by or on behalf of Woods and Haddox for use of the bayou, as the plaintiff wanted to oppose the granting of such use to them. The Sabine River Authority responded with a letter dated June 4, 1969, informing plaintiffs attorney that there was no record of an application to dig such a channel.
Approximately two years later in 1971, the plaintiff saw Haddox atop a piece of earth moving equipment digging a canal on the property of the Sabine River Authority. Although plaintiff was "devastated" that "they were cutting a creek right off," plaintiff did not approach Haddox or alert the Sabine River Authority because the work was not occurring on her property, but rather on the property by then owned by the Sabine River Authority. It is undisputed that neither Haddox nor Woods had obtained a permit from the Sabine River Authority authorizing the digging, as was required.[2] The canal intersected Mc-Donald Bayou on the east part of the property and the reservoir on the west part of the property. It had the effect of altering the flow of water in McDonald Bayou, which in turn caused the ox-bow portion of McDonald Bayou to dry up. Consequently, the plaintiff no longer had access to the Toledo Bend Lake from her property.
The Sabine River Authority was unaware of either the digging or the canal's presence until plaintiff began to experience the above effects of the canal's existence and notified it of such. The exact date that the plaintiff acquired knowledge of the damage is not clear from the record. However, plaintiff testified that although the effects of the digging of the canal were not immediate, they did not take a long *724 time to manifest themselves.[3] Upon realizing what harm had been occasioned to her property, plaintiff contacted the Sabine River Authority, through its Project Engineer, Barton Rumsey, alerting him to the presence of the canal and the deleterious effects it was having on her property. Although neither Rumsey nor plaintiff could testify to the exact date plaintiff notified Rumsey of the problem, both agreed it was some time during the 1970s.
Rumsey testified that his initial conversations with plaintiff concerning the canal could be summarized as follows: it was a matter that needed to be referred to the Board of Commissioners of the Sabine River Authority; it had been referred to that body; it had been decided that no action would be taken. Rumsey further testified that later conversations with plaintiff were to the effect that plaintiff herself should make a presentation before the Board of Commissioners. When directly asked whether he ever promised plaintiff that her problem would be fixed by the Sabine River Authority, Rumsey replied, "I don't think so, sir, not that I can recall. If I did it was wrong, and I don't remember doing that." Plaintiffs own testimony in this respect is that, "[Rumsey] said [`]we will see what we can do['] and he has been the same nice person every time. The many times that I have talked to him, [`]we will see what we can do['] and it lead me on." Plaintiff testified that after speaking with Rumsey, and at his suggestion, she attempted to schedule appointments with Mutt Fowler, the project administrator, to discuss the problem but was unsuccessful in ever scheduling a meeting with him.
In 1989, approximately eighteen years after the digging of the canal, the Sabine River Authority agreed to pay to have one end of the canal dug out in an attempt to restore the normal flow of water to Mc-Donald Bayou under the condition that plaintiff was responsible for the cost of digging out the other end of the canal. This attempt to rectify the problem was unsuccessful. Two years later in 1991, the shoreline manager for the Sabine River Authority, Harold Temple, upon a request by plaintiff and application for a permit, suggested another method whereby water might be returned to the canal which involved designing a new cutoff canal and dam. Mr. Temple testified, however, that the Sabine River Authority did not get involved in the specifications of the work plaintiff was doing on the property nor did he make any suggestions regarding any construction.[4] Plaintiff herself hired and paid for a contractor to do the work, which ultimately did not cure the problem.
Plaintiff testified that she then made an appointment with the new administrator of *725 the Sabine River Authority, Ms. Sparks, the successor to Fowler. According to plaintiff, after explaining her situation to Sparks, Sparks made several appointments to take a look at the plaintiffs property and observe the problem, but Sparks failed to keep those appointments.
In January 1992, plaintiff had the issue placed on the agenda of the Board of Commissioners. At that meeting, the Board requested that the matter be referred to the Sabine River Authority's attorney to determine its legal responsibility. At the February 19, 1992 Board meeting, the minutes reflect that the Board adopted the legal recommendation of the Sabine River Authority's attorney, who opined that plaintiff herself could have intervened via a lawsuit at the time of the original digging, for whatever reason had decided not to, and that the Sabine River Authority should not interject itself into individual disputes along the shoreline when it was not directly involved. Plaintiffs issue again appeared on the June 25, 1992 agenda, at which time her attorney addressed the Board. The Board affirmed its decision to take no action based on the prior legal recommendation.
On December 21, 1992, plaintiff filed this negligence action against the Sabine River Authority seeking damages and a mandatory injunction.[5] Plaintiffs petition alleged that the Sabine River Authority, by virtue of its control and management of its property, had an obligation to "stop the individuals from digging the canal and/or hav[e] them ... remove the canal ..." and a duty "to restore the water flow and course of McDonald Bayou to its original path...." Plaintiff further alleged that as a result of its refusal to have the problem corrected, the Sabine River Authority has caused plaintiff emotional and financial damages insofar as she herself has funded several attempts to correct the problem and has been unable to develop her property as originally intended. The Sabine River Authority responded with exceptions of prescription and no cause of action, the latter of which contended that it owed no duty to the plaintiff.
The trial court found in favor of the plaintiff and awarded damages in the amounts of $50,000 for mental anguish and $50,800 for out of pocket expenses incurred by the plaintiff in her attempts to remedy the problem. In so finding, the trial court determined that plaintiff's claim had not prescribed under the theory of continuing tort.
On appeal, the Third Circuit affirmed the judgment of the trial court as regards the general and special damage awards, but modified and remanded the case for the issuance of a permanent injunction and the computation of further damage awards for plaintiffs loss of the use of her property and for its diminished value. Crump v. Sabine River Auth., 97-1572, p. 13 (La. App. 3 Cir.1998), 715 So.2d 762, 771. In so holding, the court of appeal also determined that plaintiff's claim had not prescribed under the theory of continuing tort, finding that the "continuous action" element of that theory was met by the "Authority's contacts with Crump and repeated representations to her that it would resolve the water flow problem, as well as its unsuccessful attempts to do so." Id. at 5, 715 So.2d at 766.
The defendant sought writs from this Court, and we granted certiorari to determine whether the decision of the court of *726 appeal was correct. Crump v. Sabine River Auth., 98-2326 (La.11/25/1998), 729 So.2d 580.

LEGAL ANALYSIS
In its brief to this Court, the defendant contends that the plaintiffs negligence action has prescribed. Defendant argues that the continuing tort theory is inapplicable in this case because the digging of the canal occurred only once. Therefore, there is an absence of continuous tortious conduct, a necessary element of the continuing tort concept. Defendant further argues that the court of appeal improperly considered the plaintiff's constant contact with the Sabine River Authority while attempting to seek legal redress to be evidence of a continuing tort.
In response, the plaintiff asserts that the continued existence of the canal, coupled with the defendant's continued refusal to remove the canal, constitutes continuing tortious conduct. She further asserts that the continuing damage is manifested in her continued inability to access Toledo Bend Lake from Mc Donald Bayou. She asserts that this action is one of continuing tort, and that her claim has not prescribed. Plaintiff alternatively urges that if this Court does not find her cause of action to be one of continuing tort, prescription has been interrupted by the defendant's numerous attempts to correct the problem and by its acknowledgments that the canal was illegally constructed. Plaintiff also alternatively urges the application of contra non valentem to suspend the running of the prescriptive period because of the defendant's assurances to her that it would correct the problem.
As previously noted by this Court, the theory of continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. Bustamento v. Tucker, 607 So.2d 532, 543 n. 8 (La.1992); South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). Professor Yiannopoulos, in his treatise on Louisiana predial servitudes clarified this requirement as it relates to prescription as follows:
[A] distinction is made between continuous and discontinuous causes of injury and resulting damage. When the operating cause of the injury is `not a continuous one of daily occurrence', there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the action is barred upon the lapse of one year from the date in which the plaintiff acquired, or should have acquired, knowledge of the damage.... [This is to be distinguished from the situation where] the `operating cause of the injury is a continuous one, giving rise to successive damages from day to day....'
A.N. Yiannopoulos, Predial Servitudes, § 63 (1983). (emphasis added).
In this latter case discussed by Professor Yiannopoulos, where the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage. South Central Bell, 418 So.2d at 533. However, in cases where property has been injured or damaged, and the continuing tort theory is inapplicable, either because the operating cause of the injury is discontinuous or because the damages are not successive, prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party. La. Civ.Code Ann. art. 3493 (West 1994); South Central Bell, 418 So.2d at 532; Dean v. Hercules, Inc., 328 So.2d 69, 73 (La.1976).
In the present case, the plaintiff argues that the continued presence of the canal, coupled with the defendant's refusal to remove the canal, fulfills the requirement of continuing tortious conduct. In resolving this issue, we are best guided, under the facts of the instant case, by our prior decision in Griffin v. Drainage Commission *727 of New Orleans, 110 La. 840, 34 So. 799 (1903). In Griffin, a case analogous to the one presently before this Court, the defendant excavated a portion of St. Louis Street upon which the plaintiff's building was located in an effort to install a drain conduit, in reality a canal. In furtherance of that aim, early in the year 1899, the defendant cut a large trench across that street and in close proximity to the foundation and walls of the plaintiff's building. By April of 1899, the plaintiffs building showed cracks in the walls as a result of the excavation. In April of 1901, the damage still increasing and the foundation caving in further, plaintiff called upon the defendant numerous times seeking relief either in the form of repair or indemnity. While awaiting some relief on the part of the defendant, plaintiff himself expended money for the repair of the building. The damage culminated in the demolition of the building in May of 1901. At that point the plaintiff filed suit. The plaintiff argued the following in the trial court:
That although the act complained of in the case, and giving rise to the damage suffered, was committed more than two years before the filing of the suit, the evidence showed conclusively that the damage from that time was continuous, and of a nature so to be the cause operating the same, i.e. the disintegration of the stability of the foundations of the building, and the consequent loss of its integrity, set in motion that condition of gradual sinking of the building, causing continuous and successive items of damages to the same, rendering the same more insecure and dangerous ... and [that] prescription in this case could not begin to run from the wrongful act, further than the amount of damages done by the continuous existence of the cause. ...

Id. at 800-801. (emphasis added).
The defendant pleaded prescription, averring that the excavation work had been completed two years before plaintiffs action was brought. Noting that the excavation work had indeed been completed in 1898, this Court rejected the plaintiffs argument and found that the claim had prescribed, as the plaintiffs pleadings showed the damage commenced contemporaneously with the building of the canal. So finding, it characterized plaintiffs action as follows:
Plaintiff's action is presented to us as one in tort, for redress for the direct proximate results of negligence and want of proper care, where the operating cause of the injury is not set out as a continuing one, giving rise to successive damages from time to time from this continued existence, but as an original wrongful injury, which took place in November, 1898, and at that time and per se gave rise therefrom to a damage alleged to have steadily progressed forward; in other words, that the cause of the injury arose, produced injury, and ceased, but the resulting damages were progressive, and continued forward steadily until suit was brought.

Id. at 801. (emphasis added).
In this Griffin case, this Court found that the act of excavating the canal was the operating cause of the injury. In so holding, it rejected a somewhat similar argument made by the plaintiff that the continued existence of the ill effects of the excavation, cracks in the foundation which progressed and culminated in the demolition of the building, served as the continuous operating cause of the injury. In the instant case, the plaintiff similarly argues that the mere existence of the canal is the operating cause of daily injury because the effect of its presence is the continuous diversion of the flow of water away from the ox-bow. Relying on our prior decision in Griffin, however, we find that the actual digging of the canal was the operating cause of the injury.[6] The continued presence *728 of the canal and the consequent continuous diversion of water from the ox-bow are simply the continuing ill effects arising from a single tortious act. A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act. Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir.1981), abrogated on other grounds by, Agency Holding Corp. v. Malley Duff & Assocs. Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); Maslauskas v. U.S., 583 F.Supp. 349, 351 (D.Mass.1984). Thus, having determined that the injury producing event in the instant case was in fact the digging of the canal, the plaintiff's tort-based cause of action necessarily arises out of that activity, and it is in this context that the defendant's alleged tortious conduct must be examined.
Plaintiff's argument in this respect is that the defendant had a duty to enforce its regulations, which required the issuance of a permit before engaging in this type of excavation activity, and to prevent and/or stop the digging of the canal. Because the defendant breached this alleged duty, it then had a duty to correct the problem and remove the canal. According to the plaintiff, the defendant's subsequent refusal to have the problem corrected constitutes continuing tortious conduct.
A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant. 54 C.J.S. Limitations of Actions § 177 (1987). Assuming, but not deciding, that the defendant owed the plaintiff a duty to prevent and/or stop the digging of the canal, the breach of that duty was not continuous. Any wrong or breach of that duty occurred at the time Haddox and Woods dug the canal or upon its completion. See Kendrick v. St. John the Baptist Parish, 98-733 (La.App. 5th Cir. 3/10/99), 734 So.2d 717, 1999 WL 125954 (duty to construct patio in conformity with parish regulations was breached upon completion of the patio and was not continuing breach); National Council on Compensation Ins. v. Quixx Temporary Services, *729 Inc., 95-0725 (La.App. 4 Cir. 11/16/95), 665 So.2d 120 (breach of duty to provide correct information on an insurance application is not continuing tortious conduct). At its utmost, this duty would exist coextensive with the digging activity until the canal's completion. See Kendrick, 98-733 at 5, 734 So.2d 717. However, the record gives no indication as to how long it took to dig the canal, and plaintiff has not alleged a continuous digging which suspended the running of prescription for a period as much as twenty years.
Moreover, the defendant's duty to remove the canal would stem from its obligation under La. Civ.Code article 2315 to repair the damage caused by its tortious conduct. However, the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor. Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C.Cir.1977); Dickson Constr. v. Fidelity & Deposit Co. of Maryland, 960 S.W.2d 845, 851 (Tex.App.1997); 54 C.J.S. Limitations of Actions § 177 (1987). Thus, plaintiff's argument that the defendant's persistent refusal to remove the canal constitutes continuous tortious conduct is insupportable. We therefore conclude that the plaintiff has failed to demonstrate any continuous tortious conduct on the part of the defendant. Consequently, the theory of continuing tort cannot be applied under these facts to suspend the running of prescription.[7]
Because this negligence action involves damage to immovable property and is not one of continuing tort, it is subject to a one-year prescriptive period which commenced to run from the day the plaintiff acquired, or should have acquired, knowledge of the damage. La. Civ.Code Ann. art. 3493 (West 1994). In determining the exact date that prescription commenced, we note that plaintiff's own testimony is that, although the damage was not immediately apparent, it did not take a "very long time" to manifest itself. As such, prescription began to run on the date the damage became apparent. Although neither party can point to the precise date on which the damage became apparent, we find that plaintiff's testimony that Maddox dug the canal in 1971, and that the drying up of the ox-bow was relatively soon to follow, puts her discovery of the damage no later than 1972. Thus, plaintiff's claim, filed twenty years later in 1992, has prescribed unless there is merit to plaintiff's alternative arguments that prescription was interrupted by the defendant's acknowledgments or that the doctrine of contra non valentem served to suspend the running of prescription.
Plaintiff argues that prescription has been interrupted in this case by the successive acknowledgments by the defendant that the canal was illegally constructed and in its representations to plaintiff that its employees would assist in correcting the situation. Acknowledgment is "the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course." Gary v. Camden Fire Ins. Co., 676 So.2d 553, 556 (La.1996). It may be tacit or *730 express. A tacit acknowledgment may arise from the debtor's acts of reparation or indemnity or actions which lead the creditor to believe that the debtor will not contest liability. Id. Mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims do not constitute acknowledgments. Lima v. Schmidt, 595 So.2d 624, 634 (La.1992).
We find that the Sabine River Authority did not act in a way which would have lead the plaintiff to believe that it would not contest liability. The plaintiffs own testimony militates against such a conclusion. Her testimony reveals that the response of the shoreline manager, Rumsey, at the outset of her complaints was, "we will see what we can do" and that this response "lead [her] on." Plaintiff further testified that she was consistently unable to meet with Mutt Fowler, the administrator of the Sabine River Authority, and that although she did meet with his successor, Ms. Sparks, Sparks took no action in addressing her problem. When plaintiff later brought her issue before the Board of Commissioners, it too took no action.
Additionally, the first act on the part of the defendant which could possibly be construed as an act of indemnity or reparation was its participation in 1989 in the plaintiffs attempt to remedy the problem. However, that act occurred in 1989, well outside of the one-year prescriptive period. Therefore, even assuming it was an act of reparation, it could not serve as a basis for interrupting prescription because prescription had already run. See Gary, 676 So.2d at 556 (acknowledgment interrupts prescription before it has expired). We conclude that plaintiffs own testimony indicates that the actions on the part of the Sabine River Authority and its employees did not serve to interrupt the prescriptive period. Her argument that the defendant, through its employees, acknowledged an obligation owed to her is not supported by the record. There were no repeated assurances by the defendant that it would remedy the problem. To the contrary, if anything, the record reveals a reluctance on the part of the Sabine River Authority to take any action with regard to the plaintiff's dilemma.
Relying upon Miley v. Consolidated Gravity Drainage Dist. No. 1, 93-1321 (La.App. 1 Cir. 9/12/94), 642 So.2d 693, plaintiff alternatively argues the application of the doctrine of contra non valentem to prevent the tolling of the prescriptive period. She alleges that the employees of the Sabine River Authority gave her assurances that they were going to fix the problem and thereby lulled her into a course of inaction In Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034 (La.1987), we recognized the four instances where contra non valentem is applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. In the instant case, the plaintiff argues the applicability of the third category, which has been held to encompass situations where "an innocent plaintiff [has been]lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights." Miley, supra at p. 7, 642 So.2d at 697 (quoting Matherne v. State Farm, 599 So.2d 816, 818-819 (La.App. 1st Cir.), writ denied, 600 So.2d 648 (La.1992)).
*731 First, we note that there is no evidence or allegation of concealment or fraudulent conduct on the part of the defendant. Plaintiff's testimony was that the "we will see what we can do" attitude of the Sabine River Authority "lead [her] on." As discussed earlier with regard to plaintiffs acknowledgment argument, the record does not reveal that the Sabine River Authority assured her that it was responsible for the damage and that it would work to remedy the situation. Furthermore, the instant case is wholly distinguishable from the Miley case on which plaintiff relies, wherein the defendant's assurances to the plaintiff were undisputed and corroborated by disinterested witnesses. Miley, supra, at 7, 642 So.2d at 697. Consequently, plaintiffs argument that prescription was suspended under the equitable doctrine of contra non valentem has no merit. Having found plaintiffs alternative arguments inapplicable, we hold that plaintiff's negligence action has prescribed.

CONCLUSION
In conclusion, we find that the operating cause of the injury in this case was the digging of the canal on the defendant's property and that the plaintiff has failed to establish continuous tortious conduct on the part of the defendant in connection with that activity. Accordingly, the theory of continuing tort is inapplicable, and plaintiffs negligence action is subject to the prescription of one year, commencing on the date the damage was apparent to her. The record indicates that the damage was apparent to the plaintiff no later than 1972, and therefore, we hold that plaintiff's negligence action, filed in 1992, has prescribed.

DECREE
JUDGMENT OF THE COURT OF APPEAL REVERSED; PLAINTIFF'S SUIT DISMISSED.
NOTES
[*] Victory, J., not on panel. See Rule IV, Part 2, § 3.
[1] The Sabine River Authority was created by Act 261 of 1950 as a corporation and political subdivision of the State of Louisiana. Its powers include conservation, regulation, and preservation of the Sabine River and its tributaries.
[2] Inexplicably, plaintiff did not file suit against Haddox and/or Woods, and these individuals have not been made party to the instant litigation.
[3] Plaintiff's exact testimony on this point was as follows:

Q: How long was it after this canal was dug that you began to notice it was effecting you or your property?
A: Well, it was really not very long, I don't know exactly.
Q: The next day, or did it take a period of time?
A: No, it took a period of time.
Q: So would you estimate for the Court about how long it was before you noticed a problem?
A: It must have beenit was not very long because I was raising cane with Mr. Rumsey all of this time.
Q: Well, what problem did you notice, how was your property effected by this canal?
A: My creek was notdidn't have water in it. The channel had been dug deeper than my creek and it filled up first.
[4] Temple specifically testified:

No, I did not [make any suggestions regarding the construction of a dam], we did not get involved in doing their specifications because one I've been basically semi-instructed to that by my supervisor because if we do do it and we make the recommendations as though we are providing them engineering and then it does become a failure and they come back and say `I did what you told me, I spent this much money and it failed.' All I did was exercise common sense from my experience regarding the best way to eliminate the problem by diverting the water and putting the fill there and that was her choice, she hired a contractor....
[5] We perceive plaintiff's petition to state a cause of action exclusively in tort and therefore reach only that issue. While we do not see any other cause of action stated in the petition, plaintiff makes an argument in brief regarding the defendant's status as a riparian land owner and the concomitant duty to restore the natural course of a body of water where it leaves defendant's estate once the ordinary course has been altered. Plaintiff argues that since the prescription of non-use does not run against natural servitudes, an action for injunctive relief to enforce this servitude is imprescriptible. Nonetheless, as the petition does not make these contentions or state such a cause of action in this regard, we give no further attention to this argument.
[6] Our conclusion that the activity of digging the canal was the operating cause of the injury in this case is supported by our prior jurisprudence on this issue. The term "operating cause of the injury" can best be understood by examining the context in which it has been used in prior decisions from this Court that have found the theory of continuing tort applicable. In Di Carlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327, 329 (1933), this Court found that plaintiff's claim, one of continuing nuisance, was "of a continuing nature and daily renewal." In Di Carlo, the plaintiff alleged that the continuous operation of certain machines not kept in repair in the defendant's laundry business caused constant vibrations, which in turn caused constant emotional and physical damage to the plaintiffs. This Court found the plea of prescription to be untenable in that case stating, "In such cases, when`the injury is of a continuing nature, the cause of action continues and is renewed de die in diem, as long as the cause of the continuing damage is allowed to continue.'" Di Carlo, 152 So. at 329 (quoting Addison on Torts, p. 1163). Subsequently, in Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947), this Court again found that plaintiffs' claim had not prescribed where the defendant's continued operation of its railroad terminal in a negligent manner caused the continuous emission of dense smoke, gases, soot, and cinders onto their property. This Court stated, "[T]he evidence unmistakably shows that the operating cause of the injury is a continuous one, giving rise to successive damages from day to day...." Devoke, 30 So.2d at 822. Similarly, in Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968), this Court again found that prescription had not run on plaintiffs' claim where plaintiffs had established that they suffered continuous damages to their property as a result of the continuous construction operations of the defendant. Those damage causing operations consisted of pile driving and the operation of saws and trucks during the construction of an addition to the defendant's property, all of which continuously occurred over a six month period.

Professor Yiannopoulos speaks of these particular property damage cases in terms of having "continuously damaging operations." He characterizes the operating causes of injury therein as "pile driving, use of heavy machinery causing vibrations, running of a railroad that causes emissions of smoke, dust or soot, and the operation of a freight terminal." Yiannopoulos, supra, at 195. (emphasis added).
[7] We additionally note that the court of appeal in the instant case erred when it found that the defendant's contacts with the plaintiff subsequent to the canal's construction fulfilled what the court of appeal referred to as the "continuous action" element of a continuing tort. The continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury. Discussions between the plaintiff and the defendant about the canal, its effects, and possible remedies is neither continuing tortious conduct nor the operating cause of the injury. Moreover, as we have concluded that there is an absence of continuous tortious conduct on the part of the defendant in this case, we do not reach the issue of whether the nature of plaintiff's damages satisfies the successive damages requirement, although it would seem to be evident that the damage occasioned by the plaintiff is not the successive and continuous type of damage contemplated in cases of continuing tort.