# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #058

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **20th day of November, 2015**, are as follows:

**PER CURIAM**:

2015-C -0823    MEIKO PREVO v. STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS DIVISION OF PROBATION AND PAROLE, WEBSTER PARISH SHERIFF'S OFFICE, MINDEN PROBATION AND PAROLE (Parish of Webster)

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court granting the exception of prescription filed by the State of Louisiana, Through the Department of Public Safety and Corrections Division of Probation and Parole is hereby reinstated.

JOHNSON, C.J., dissents for the reasons assigned by Knoll, J.
KNOLL, J., dissents and assigns reasons.
HUGHES, J., dissents for the reasons of Knoll, J.
CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0823

MEIKO PREVO

VERSUS

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS DIVISION OF
PROBATION AND PAROLE, WEBSTER PARISH SHERIFF'S
OFFICE, MINDEN PROBATION AND PAROLE

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF WEBSTER

PER CURIAM

In this matter, we are called upon to determine whether the court of appeal erred in reversing the judgment of the district court which granted defendant's exception of prescription and dismissed plaintiff's suit. For the reasons that follow, we conclude the judgment of the district court was correct.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Meiko Prevo, was arrested in April 2000 in East Baton Rouge Parish, Louisiana, for the felony offense of crime against nature. Plaintiff ultimately pleaded guilty to a reduced charge of criminal mischief, a misdemeanor. She was sentenced to ninety days in jail, suspended, and placed on probation for a period of one year, which she successfully completed. For purposes of this opinion, it is important to note that plaintiff was not required to register as a sex offender based on her conviction for misdemeanor criminal mischief.

In September 2008, plaintiff was again arrested and charged with distribution of cocaine. She pleaded guilty, received a hard labor suspended sentence, and was

1

placed probation for a period of five years with the State of Louisiana, Department of Public Safety Division of Probation and Parole.

Thereafter, plaintiff reported to her probation officer, David Phillips. Officer Phillips reviewed plaintiff's criminal history "rap sheet" from the Louisiana State Police, which identified her as a sex offender based on a disposition for crime against nature in April 2000. He also relied on an East Baton Rouge Parish "conviction notification" which showed she was convicted of crime against nature. Based on this information, Officer Phillips advised plaintiff that she was required to register as a sex offender based on what he understood to be her earlier 2000 conviction, and if she failed to do so, she would be sent to jail to serve her five-year sentence.

Plaintiff objected to being required to register as a sex offender. Plaintiff had the attorney who represented her in connection with her April 2000 arrest telephone Officer Phillips to inform him that she had pleaded guilty to a misdemeanor charge of criminal mischief. Nonetheless, Officer Phillips maintained plaintiff was required to register as a sex offender. On September 9, 2008, plaintiff registered as a sex offender.

On several occasions after registering, plaintiff continued to ask Officer Phillips to further investigate her case, claiming each time that she was not a sex offender and should not have to be registered.[1] According to plaintiff, Officer Phillips took no action on her requests.

At some point between June 14, 2010 and September 2010, plaintiff traveled to East Baton Rouge Parish to obtain her criminal records, including the pertinent district court minutes. These records confirmed that plaintiff was convicted of criminal mischief in 2000.

---

[1] Plaintiff initially failed to re-register in 2010, but did so after law enforcement officials visited her home.

Meanwhile, in September 2010, plaintiff was assigned a new probation officer, Officer Mike Ware. During plaintiff's initial meeting with Officer Ware, she informed him that she had not been convicted of crime against nature and was erroneously required to register as a sex offender. Officer Ware investigated plaintiff's allegations and obtained information from the East Baton Rouge Parish Clerk of Court showing plaintiff's guilty plea to the misdemeanor charge of criminal mischief. In correspondence dated October 11, 2010, Officer Ware informed plaintiff of his findings and began the process of having her removed from the sex offender registry.

On October 7, 2011, plaintiff filed the instant suit against several defendants, including the State of Louisiana, Through the Department of Public Safety and Corrections Division of Probation and Parole ("State").[2] Essentially, plaintiff alleged she was coerced to register as a sex offender and suffered significant injury as a result.

During discovery, the State took plaintiff's deposition. In her deposition, plaintiff testified that during her initial meeting with Officer Phillips in 2008, as well as subsequent meetings, she advised him she had never been convicted of a sex offense and was not required to register as a sex offender. She further testified that in 2008, she contacted Jim Hall, the attorney who represented her when she pleaded to the criminal mischief charge in 2000, and had him speak with Officer Phillips and confirm she was not a sex offender.

After discovery, the State filed a peremptory exception raising the objection of prescription. In support of the exception, the State argued plaintiff's petition sounded

_____

[2] Additionally, plaintiff named the Webster Parish Sheriff's Office as a defendant. This defendant filed an exception of prescription. The district court granted the exception, and the court of appeal affirmed. This ruling is not before us in the current matter.

in tort and was subject to a one-year prescriptive period. Relying on plaintiff's deposition testimony, the State asserted plaintiff was aware she was not required to register as a sex offender in 2008, but did not file suit until October 7, 2011.

After a hearing, the district court sustained the State's exception of prescription and dismissed plaintiff's suit with prejudice.

Plaintiff appealed. A five-judge panel of the court of appeal, with two judges dissenting, reversed the judgment of the district court insofar as it granted the State's exception of prescription.[3] *Prevo v. State of Louisiana*, 49,650 (La. App. 2 Cir. 3/4/15), __ So.3d ___.

Upon the State's application, we granted certiorari to consider the correctness of this decision. *Prevo v. State of Louisiana*, 15-0823 (La. 6/30/15), ___ So.3d ___.

## DISCUSSION

The rules of prescription are designed to prevent old and stale claims from being prosecuted. *Wells v. Zadeck*, 11-1232, p. 7 (La. 3/30/12), 89 So.3d 1145, 1149. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. *Campo v. Correa*, 01-2707, p. 7 (La.6/21/02), 828 So.2d 502, 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Campo*, 01-2707 at p. 7, 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La. 1993).

In the instant case, the undisputed evidence indicates plaintiff believed as early as September 2008 that she had not been convicted of an offense which required her to register as a sex offender. Plaintiff's suspicions were confirmed no later than

---

[3] As discussed in footnote 2, *supra*, the court affirmed the exception of prescription in favor of the Webster Parish Sheriff's Office. This portion of the court of appeal's judgment is not at issue.

4

September 2010, when she obtained her court records which revealed she was convicted of criminal mischief and not crime against nature. Despite this knowledge, she did not file suit until October 7, 2011. Therefore, her suit is prescribed on its face.

Nonetheless, plaintiff argues the doctrine of *contra non valentem* should apply under these facts, as any delay on her part in bringing the action was not willful or negligent. Rather, she claims the State's acts of misrepresentation hindered, impeded, or prevented her from asserting her cause of action.

To mitigate the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription known as *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit. *Carter v. Haygood*, 04-0646 (La.1/19/05), 892 So.2d 1261. This principle is based on the equitable notion that no one is required to exercise a right when it is impossible for him or her to do so. *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992).

Although the jurisprudence has recognized four categories of *contra non valentem*, the focus of the instant case is on the third category, which applies "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action." *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1054-55 (La. 1987). We have held this category encompasses situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights. *Crump v. Sabine River Authority*, 98-2326, p. 13 (La. 6/29/99), 737 So.2d 720, 730. In essence,

5

this category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. *Whitnell v. Menville*, 540 So.2d 304, 308 (La. 1989).

In *Marin v. Exxon Mobil Corp.*, 09-2368, p. 24 (La. 10/19/10), 48 So.3d 234, 252, we held there are three elements which must be established in order for the third category of *contra non valentem* to apply: (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction.

Applying the *Marin* analysis to the facts of the case at bar, we find the first element is not satisfied. Although plaintiff argues Officer Phillips made misrepresentations to her regarding her status as a sex offender, a review of the evidence does not support this conclusion. In particular, Officer Phillips testified that at the time he met with plaintiff, he relied on documents from the State Police as well as a conviction notification from East Baton Rouge Parish which indicated plaintiff had been convicted of crime against nature. He further testified he requested additional records from East Baton Rouge Parish Clerk of Court's office, but was advised these records were not available.

While Officer Phillips' determination of plaintiff's status as a sex offender later turned out to be erroneous, there is no indication he willfully concealed information from her or made intentional misrepresentations. Rather, he simply made misstatements of fact based on the information available to him at the time. In *Rajnowski v. St. Patrick's Hospital*, 564 So.2d 671, 674 (La. 1991), we held that "misstatements do not constitute fraud, concealment, misrepresentation or a breach

of a duty to disclose, and did not prevent plaintiffs from learning of the cause of action and filing suit."

Moreover, even assuming for sake of argument that Officer Phillips' statements could be considered misrepresentations, we find plaintiff failed to satisfy the second element of the *Marin* test, because she cannot show the State prevented her from pursuing her cause of action. Plaintiff's deposition testimony establishes she immediately challenged Officer Phillips' conclusion that she had been convicted of crime against nature. She took steps to verify her true status, including contacting the attorney who represented her in connection with the earlier criminal charge and obtaining her conviction records. The State did nothing to impede plaintiff's efforts to determine whether she was in fact required to register as a sex offender.

In brief to this court, plaintiff emphasizes the fact that Officer Phillips threatened her with prison if she did not comply with his demands. We find plaintiff's focus is misplaced. Admittedly, Officer Phillips advised plaintiff she could be imprisoned if she did not register a sex offender. However, Officer Phillips' statement was simply based on his mistaken belief that plaintiff was a sex offender who was required to register and who would face consequences under the law if she did not do so.

Most importantly, there is no evidence that Officer Phillips threatened plaintiff with consequences if she pursued her legal remedies to determine whether she was in fact required to register. In this regard, the facts of the case at bar stand in sharp contrast with those of *Nathan v. Carter*, 372 So.2d 560 (La. 1979), in which the defendants threatened the plaintiff with termination if she attempted to contact an attorney and determine her legal rights:

> In applying the law to the facts as contained in the record
> before us, it is clear that plaintiffs alleged acts of fraud and

7

misrepresentation intentionally committed by defendants (or their representative) designed to hinder, impede, or prevent plaintiffs from asserting their cause of action or lull them into a false security. It is equally apparent that the record herein does not support a finding that plaintiffs' delay in bringing this action was either willful or resulted from plaintiffs' own negligence. **As alleged by plaintiffs, defendants threatened Mrs. Nathan with termination of her compensation benefits if she ever contacted an attorney. Viewed in this light, the acts of fraud and misrepresentation committed by defendants constituted a continuing threat calculated to prevent assertion of this claim for as long as the compensation payments continued.** As such, plaintiffs' delay in bringing this action was a direct result of the fraud or misrepresentation allegedly committed by defendants rather than of their own willfulness or negligence. [emphasis added].

In the instant case, the State did nothing to prevent plaintiff from ascertaining and exercising her legal rights. This conclusion is clearly illustrated by the evidence which reveals plaintiff did in fact contact her former attorney and obtain her criminal records without any interference or retaliation by the State. Given these facts, we do not find the State's actions prevented plaintiff from pursuing her cause of action in any way.

Finally, the third element of *Marin* requires us to determine whether plaintiff's inaction was reasonable under the fact. In applying this element, plaintiff urges us to consider her limited education as well as her mental health history of bipolar disorder and schizophrenia.

Our jurisprudence has long recognized that the reasonableness of a plaintiff's action or inaction must be considered in light of his or her education, intelligence and the nature of the defendant's conduct. *See, e.g.*, *Griffin v. Kinberger*, 507 So.2d 821 (La. 1987). Nonetheless, based on our review of the record, we do not believe plaintiff's educational status or mental condition impaired her from learning of her cause of action. As discussed above, plaintiff had the presence of mind to contact her

former criminal attorney in 2008 and obtain her criminal records by September 2010. Plaintiff was convinced she was not required to register as a sex offender. Given this level of knowledge, we believe it was unreasonable for plaintiff to delay availing herself of her legal remedies until October 2011.

In summary, we find plaintiff's suit is prescribed on its face. Plaintiff has failed to establish any basis for application of the doctrine of *contra non valentem* to prevent the running of prescription. Accordingly, we find the district court properly granted the State's exception of prescription, and the court of appeal erred in reversing that judgment.

### DECREE

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court granting the exception of prescription filed by the State of Louisiana, Through the Department of Public Safety and Corrections Division of Probation and Parole is hereby reinstated.

**SUPREME COURT OF LOUISIANA**

**NO. 2015-C-0823**

**MEIKO PREVO**

**VERSUS**

**STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS DIVISION OF PROBATION AND PAROLE, WEBSTER PARISH SHERIFF**

**JOHNSON, C.J.,** dissents for the reasons assigned by Knoll, J.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0823

MEIKO PREVO

VERSUS

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS DIVISION OF
PROBATION AND PAROLE, WEBSTER PARISH SHERIFF

**KNOLL, J., dissents.**

This case arises out of a troubling set of facts involving the incompetence of State actors, their failure to exercise common sense and compassion when dealing with a marginalized probationer, and the enduring suffering and ostracism she has suffered as a result of their negligence and dismissiveness. After discovery was conducted, the State filed an exception of prescription, arguing the plaintiff, Meiko Prevo, was aware she was not required to register as a sex offender in **2008** but failed to file suit until **October 7, 2011**. While the District Court granted the State's exception of prescription and dismissed Ms. Prevo's suit, the Court of Appeal reversed that portion of the District Court's judgment granting the State's exception of prescription. Because I am convinced that Ms. Prevo was the victim of a continuing tort and that the operating cause of that tort was not abated until her name was removed from the sex offender registry, I dissent from the majority's opinion and would affirm the judgment of the Court of Appeal.

For two years, Ms. Prevo was forced to register as a sex offender, all the while insisting to her probation officer that she had not committed a sex offense. Her probation officer at this time, David Phillips, admitted in his deposition testimony he told Ms. Prevo "that immediately she would be arrested if she failed

to register." During this two year period of time, Ms. Prevo alleges the State's negligence caused her to be denied employment opportunity and to be continuously disparaged by members of her community. Her driver's license bore a "SEX OFFENDER" label, and every car that she drove, whether she owned it or not, had to be registered. Her picture was posted on a bulletin board at her nieces' and nephews' school. Every house within a two-block radius of her residence was notified that she was registered as a sex offender. Ms. Prevo alleges this negligently-imposed status drove her from school events with her nieces and nephews. It has affected—indeed, ended—personal relationships and has caused serious emotional distress. Amazingly, the State would likely still require Ms. Prevo to register had it not been for her persistence. Frustrated with her probation officer's continued dismissiveness, Ms. Prevo—a woman with an eighth-grade education—took matters into her own hands and obtained proof from court records that she had never been convicted of a sex offense. After receiving a copy of these records from Ms. Prevo, her new probation officer, Mike Ware, finally took the initiative to investigate the matter further and realized she was not required to register as a sex offender. Although neither he nor Ms. Prevo recall what day he notified her of this news over the telephone, she received a letter informing her of this fact on ***October 11, 2010***. In his deposition, Officer Ware testified there was "a delay in time"—"either in 2010 or it had turned over to early 2011"—before he received a response from the Louisiana State Police Bureau of Identification concerning his request to have Ms. Prevo removed from the State Police's sex offender registry.

In my view, the majority errs in finding Ms. Prevo's suit prescribed because Ms. Prevo's allegations and the record supporting them indicate she was the victim of a continuing tort.[1] Professor Maraist has elaborated on the jurisprudential

---

[1] Although Ms. Prevo does not submit this argument as grounds for affirming the Court of Appeal's judgment, we

2

distinction between discontinuous and continuous torts:

> In some cases, multiple, distinct acts by the tortfeasor cause separate and distinct damages; in those cases, each act gives rise to a separate tort, and prescription begins to accrue on each tort when the damage is sustained or at some later date, if the "discovery doctrine" applies. However, if both the tortious conduct and the damage continue, the tort may be deemed a "continuing" one and prescription may not begin to run until the wrongful conduct ceases.[2]

As we have stressed, "[a] continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original wrongful act."[3] Moreover, "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury."[4] In my view, the State's egregious conduct in this matter can only be described as a continuous tort. In this case, the operating cause of Ms. Prevo's injury was the State's decision to force her to register "out of an abundance of caution" even though, as Officer Phillips admitted in his deposition, there was confusion as to whether or not Ms. Prevo was required to register when this decision was initially made. This operating cause *continued* to bring about harm as the State, through Officer Phillips, recalcitrantly refused to follow-up concerning Ms. Prevo's complaints. Indeed, as Ms. Prevo testified, she repeatedly sought to direct the State's attention to its error. Each time, her vigorous attempts to persuade the State to correct the problem were ignored by those who had authority over her and who, admittedly, threatened her with arrest if she refused to register. Officer Mike Ware's testimony supports Ms. Prevo's version of events. Indeed, Officer Ware testified that, after assuming control over Ms. Prevo's file and listening to her complain that she was not required to register, Officer Ware took the matter up with Officer Phillips, who was then his supervisor and Ms. Prevo's *former* probation officer: "And [Officer Phillips] told me that, well,

---

are required by Louisiana Code of Civil Procedure Article 2164 to "render any judgment which is just, legal, and proper upon the record on appeal."

[2] Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 10-4(e) (1996).

[3] *Hogg v. Chevron USA, Inc.*, 09-2632, p. 16 (La. 7/6/10), 45 So.3d 991, 1003 (quoting *Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99), 737 So.2d 720, 728).

[4] *Id.* (quoting *Crump*, 98-2326 at 11, 737 So.2d at 729 n. 7).

she's claimed that before, it's been checked out, she does have to register and that he had verified that." In fact, Officer Phillips had never seen the court minutes confirming that Ms. Prevo was not convicted of a sex offense. In other words, he had not verified it. If Officer Ware had taken Officer Phillips' derelict approach to Ms. Prevo's situation, she would more likely than not still be suffering as result of the State's negligently imposed and unlawful requirement that she register.

We have repeatedly held that the prescriptive period on a continuing tort does not begin to run until the conduct causing the harm has ceased. Indeed, as we explained in *South Central Bell Telephone Co. v. Texaco Inc.*, "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated."[5] Here, the negligent conduct causing Ms. Prevo's injury did not abate, at its earliest, until such time as Officer Ware informed Ms. Prevo that he had investigated further and that the State determined she was not required to register. The only evidence submitted concerning that date is the correspondence Officer Ware transmitted to Ms. Prevo on **October 11, 2010**. Because Ms. Prevo filed her lawsuit on **October 7, 2011**—within one year as required by Louisiana Civil Code Article 3492—her claim is plainly not prescribed.

Given all that the record shows Ms. Prevo has endured and, indeed, continues to endure because of the State's error, it would be a grave injustice to this woman if this case did not go forward. While this reason alone is not enough to bend the dictates of the law, in my view, our jurisprudence permits such a result and justice demands it. Accordingly, I respectfully dissent from the majority's opinion and would affirm the judgment of the Court of Appeal denying the State's exception of prescription, reinstating Ms. Prevo's suit, and remanding for further proceedings.

---

[5] *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982).

4

**SUPREME COURT OF LOUISIANA**

**NO. 2015-C-0823**

**MEIKO PREVO**

**VERSUS**

**STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS DIVISION OF PROBATION AND PAROLE, WEBSTER PARISH SHERIFF'S OFFICE, MINDEN PROBATION AND PAROLE**

**CRICHTON, J.,** concurs.

I agree with the majority opinion in this matter and write separately to further emphasize the inapplicability of the equitable doctrine of *contra non valentem* to this case.

The doctrine of *contra non valentem* is a jurisprudentially created exception to the ordinary operation of liberative prescription and should only be applied by courts in exceptional circumstances. Its applicability is highly limited; in fact, the text of neither the current Louisiana Civil Code nor the Civil Code of 1870 provides for it. Current La. C.C. 3467 reads: "Prescription runs against all persons unless exception is established by legislation." Comment (d) to this article acknowledges that cases interpreting the predecessor of this article, La. C.C. art. 3521, "in exceptional circumstances…resorted to the maxim." And the comment concludes, "This jurisprudence continues to be relevant." Thus, the revision of the law of prescription acknowledges ambivalently that the courts may apply the maxim.[1]

---

[1] See generally, 24 Dian Tooley-Knoblett & David Gruning, Louisiana Civil Law Treatise § 11:41 (2014).

With these considerations in mind, based on the facts of this case, it is clear the doctrine should not be applied to inure to the benefit of the plaintiff.[2] Significantly, Agent Phillips, in my view, relied in good faith on the State of Louisiana database; further, he twice contacted the East Baton Rouge Clerk of Court with a request for the minutes, each time being told they were unavailable. There is no evidence that he engaged in misrepresentation, fraud, ill practice or, as plaintiff alleged, coercion. There is evidence, however, that plaintiff had numerous opportunities to rectify the mistake which was, at its core, a misunderstanding based on clerical error.[3] Specifically, between the date in 2008 when plaintiff registered as a sex offender (thereby completing her cause of action in tort) and the year that followed, plaintiff, through counsel of record or as a self-represented party, could have requested judicial intervention and a ruling from the district court which, because of her status as a state probationer, maintained continuing jurisdiction over the case. Of course, another choice for plaintiff would have been to retain her civil attorney within this prescriptive period to file suit in tort – which she finally accomplished about three years later – on October 7, 2011.

Finally, I write separately to question the court of appeal's implication of wrongdoing by the agent. To suggest wrongdoing implies that there was an additional duty on the probation agent to research the criminal status of a probationer beyond the state database and obtain almost decade-old records from

---

[2] In *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, we explained that in applying continuing tort theory, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." Thus, contrary to the view expressed in the dissenting opinion, I do not find the plaintiff to have been a victim of a continuing tort. Rather, it is my view that plaintiff suffered one injury in 2008, when the State gave her erroneous information indicating she was required to register as a sex offender, although the damage arising from this injury may have persisted for some time thereafter.

[3] Plaintiff stated in her deposition, "[In 2010] that's when I went to Baton Rouge to get all my background stuff. And then I brought it back, and I gave it to my probation officer." *Prevo depo.*, p. 175: lines 1-4.

the Clerk of Court. Notwithstanding that the answer to this question is beyond the prescriptive issue and well into the merits of the tort analysis, the lower courts' implication that such an additional duty should have been imposed on the probation agent under these circumstances is improper.