Judgment rendered July 24, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,707-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BOBBY WASHINGTON, ET AL          Plaintiffs-Appellants

versus

ROBINSON BROS FARMS, LP          Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 639,491

Honorable Michael A. Pitman, Judge

* * * * *

KELVIN G. SANDERS                Counsel for Appellants
LARRY ENGLISH

BRADLEY, MURCHISON, KELLY,       Counsel for Appellee
& SHEA, LLC
By: Dwight C. Paulsen, III

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

STONE, J., dissents with written reasons.

**MARCOTTE, J.**

This appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Michael Pitman presiding. Appellants-Plaintiffs, Pastor Bobby Washington and 25 others, who are members of the Mary Evergreen Baptist Church, appeal the trial court's ruling sustaining defendant's exceptions of no right of action, no cause of action, and prescription, and dismissing their petition with prejudice.

## FACTS AND PROCEDURAL HISTORY

On September 9, 2022, Pastor Bobby Washington ("Pastor Washington"), Gwendolyn Washington ("Gwendolyn"), and 24 others ("plaintiffs"), all members of the Mary Evergreen Baptist Church (the "Church"), filed a petition for damages naming as defendants Robinson Bros Farms, LP (the "Farm" or "defendant") and ABC Insurance Co. Plaintiffs stated that they are members of the Church, which was established in 1882 and located at 9889 Keatchie-Marshall Road in Caddo Parish, Louisiana. The Church's sanctuary was built in 1923. On March 7, 2021, plaintiffs discovered that the Church's building had been torn down. The Farm posted signs on the property which read: "PRIVATE PROPERTY ROBINSON BROTHERS FARM NO TRESPASSING." The petition alleged that the signs remained on the Church property until January 2022.

Plaintiffs claimed that defendant stole 16 pews, 30 chairs, 2 air conditioning handler units, and other furnishings and equipment from the sanctuary. Plaintiffs stated that they did not give defendant permission to enter or remove property from the Church or tear down the building and that defendant deprived them of the use and enjoyment of the Church facility.

Plaintiffs listed various injuries resulting from defendant's trespass and negligence. Plaintiffs pled numerous damages and asked for attorney fees.

Plaintiffs attached a 2021 Caddo Parish property tax assessment for 9889 Keatchie-Marshall Road. "Mary Evergreen Church" was listed as the owner of the property. Plaintiffs also attached a March 7, 2021, report from the Caddo Parish Sheriff's Office ("CPSO") stating the same information listed in the petition. The report stated that Pastor Washington told the CPSO that he had not been at the Church building for more than a year because the Church relocated to another building in Shreveport, Louisiana. Pastor Washington provided the CPSO with documentation that Gwendolyn's family owned the Church and surrounding property.

On October 14, 2022, the Farm filed exceptions to plaintiffs' petition. The Farm first argued that plaintiffs' claims had prescribed. Defendant stated that plaintiffs were claiming trespass, which had a one-year prescriptive period from the date the owner of the property had actual or constructive knowledge of the damage. Defendant contended that plaintiffs' claim of conversion of property also had a one-year prescriptive period from the date the injury or damage was sustained. Defendant argued that plaintiffs discovered the alleged damage on March 7, 2021, but they did not file their petition until September 9, 2022, more than one year after the discovery.

Defendant next alleged that plaintiffs had no right of action because the claims of trespass and conversion both required that the action be brought by the owner of the property. Defendant argued that plaintiffs did not allege in their petition that they owned the building and damaged items.

2

Defendant stated that the 2021 tax assessment plaintiffs attached to their petition stated that the building and items contained within were owned by the Church and not plaintiffs. Defendants argued that plaintiffs filed suit in their personal capacities and not on behalf of the Church.

Defendant asserted that plaintiffs had no cause of action regarding their claim for attorney fees because their petition failed to allege a statutory basis for the fees. Defendant asked that its exceptions be granted and plaintiffs' petition be dismissed with prejudice at their cost.

Plaintiffs opposed defendant's exceptions arguing that its claim of trespass was a continuing tort because the Farm posted "No Trespassing" signs which remained on the property until sometime in January 2022. Plaintiffs contended that the placement of the signs interrupted the running of prescription until they were removed by defendant. Plaintiffs alleged that they were members of the Church, which was an unincorporated association, domiciled and operating in Caddo Parish. Plaintiffs claimed that under La. C.C.P. art. 611(A) they were entitled to bring a derivative action as members of the unincorporated association that was the Church. Plaintiffs conceded that there was no statutory basis for the attorney fees and voluntarily dismissed the claim.

Defendant replied to plaintiffs' opposition arguing that their claims related to the destruction of the sanctuary and the removal of items from the building had prescribed because those were singular events and not continuing torts. Defendant argued that more than one year had passed from when plaintiffs discovered that the Church building was torn down and the items inside were missing. Defendant claimed that plaintiffs' claims related

3

to the placement of the "No Trespassing" signs had also prescribed and should have been dismissed because they failed to meet their burden of proving that the sign was located on the property within one year of filing suit. Defendant stated that plaintiffs failed to explain why they would permit the sign to remain on the property following their discovery of it.

Defendant asserted that plaintiffs also failed to establish that they had a right of action to bring a trespass claim, as their basis for doing so, La. C.C.P. art. 611(A), about derivative actions, was inapplicable. Defendant pointed out that plaintiffs did not file suit against the Church or any of its officials on the basis that the entity refused to enforce a right. Defendant maintained that the Church was the proper plaintiff to allege a trespass claim.

On January 18, 2023, plaintiffs filed a supplemental and amending petition alleging that the Church was an unincorporated association founded in 1882 and was the owner of the property located at 9889 Keatchie-Marshall Road.[1] The supplemental and amending petition also added additional names to its list of Church members.

Defendant opposed the supplemental and amending petition and re-urged the same exceptions and arguments to the original petition. Defendant asserted that plaintiffs still did not add the Church as a party to the suit or explain why they have a right to bring suit. Defendant added that there was

[1] In its memo in support of its opposition to plaintiffs' supplemental and amending petition, defendant stated that the exceptions were considered by the trial court at a hearing held on December 19, 2022. At the hearing, the court deferred ruling on all of defendant's exceptions to give plaintiffs 30 days to amend their petition to address the defects raised by defendant. The transcript of that hearing is not included in the record. The minutes state solely that the matter was passed.

4

no continuing tort related to the placement of the "No Trespassing" signs because the tortious conduct ended once the signs were placed. Defendant argued that if the Church truly believed that it owned the property, the members could have removed the sign when they discovered it on March 7, 2021.

Plaintiffs opposed defendant's exception to their supplemental and amending petition making arguments similar to those in their opposition to defendant's original exceptions. Plaintiffs added that under La. C.C.P. art. 689, an unincorporated association has the procedural capacity to sue to enforce its rights in its own name and appear and be represented by its president or other authorized officer.

On July 31, 2023, a hearing was held on the exceptions. Defendant argued that the Church was not joined in the suit, so the plaintiffs had no right of action to proceed with their suit. The Farm also stated that the placement of the "No Trespassing" signs is not a continuing tort, as the Church could have removed the signs upon their discovery, and plaintiffs did not file suit until more than one year had passed from their discovery.

Plaintiffs argued that they had a right of action through La. C.C.P. art. 611 as an unincorporated association because Pastor Washington had been the pastor of the Church. Plaintiffs also stated that the "No Trespassing" signs were not removed until January 2022, within the one-year prescriptive period. Defendant asserted that Pastor Washington was not the president of the Church, so La. C.C.P. art. 611 did not apply.

Earnest Robinson ("Robinson") testified that he was a partner of the Farm, which was a limited partnership registered in Texas. He said that the

Farm owned a five-acre tract of land in Caddo Parish, which included where the Church sanctuary was located. He described himself as an "absentee landlord" because he resided in Covington, Louisiana, and did not visit the property often. He stated that when the Farm acquired the property in 2001, the Church was in use, but that changed in 2013 when the power was cut off to the Church. Defendant decided to demolish the sanctuary because it was in a "deplorable" condition, and defendant was concerned about illicit activities occurring there and potential liability as the property owner. Robinson testified that the building was demolished on February 4, 2021, and the debris from the demolition was left on the property; nothing was removed from the Church. Robinson stated that some of the items from the Church were already missing before it was torn down.

Robinson testified that he then placed three "No Trespassing" signs on the border of the property in a parish government right-of-way located by Keatchie-Marshall Road. He said that within two months of the demolition of the Church sanctuary, around May 2021, he went to the property and noticed the "No Trespassing" signs had been removed. Robinson stated that no one contacted him about the demolition of the Church building.

Pastor Washington testified that he was the former pastor of the Church and was a current member on its board of trustees. Pastor Washington said that the Church building had been standing for over 100 years. He said he went to the Church one day and the ceiling had fallen and it was then that services were no longer held at that location. He said that he last recalled seeing "No Trespassing" signs on the property in January 2022. Pastor Washington testified that the signs were near the entrance to the

Church building, and he disagreed with Robinson's testimony about where the signs were placed. Pastor Washington said that he did not contact the Farm when he first saw the "No Trespassing" signs on March 7, 2021, because there was no phone number on the sign and he did not know how to contact defendant.

The trial court asked Pastor Washington why there was a delay in filing suit. He explained that there was a difference of opinion among the Church members about whether they should file suit.

The parties made additional arguments similar to those in their filings to the trial court. Defendant added that Robinson's and Pastor Washington's testimony conflicted about where the signs were placed, suggesting that they were moved after Robinson placed them. Defendant argued it could not be held liable for a continuing tort if a third party moved the signs.

The trial court stated that it found that the matter had prescribed because plaintiffs discovered the demolition of the Church building and the "No Trespassing" signs on March 7, 2021, but plaintiffs did not file suit until September 9, 2022, after the one-year prescriptive period had passed. The trial court stated that it was unable to find any jurisprudence stating that the posting of a "No Trespassing" sign constituted a continuing tort. It said that a "No Trespassing" sign was small and easily removable, which was distinct from something a person could not remove on his own, such as an electrical or telephone pole with attached wires. The trial court also found that plaintiffs did not have the authority to appear in court on behalf of the Church under La. C.C.P. art. 689. The trial court granted the exceptions of no right of action, no cause of action, and prescription. Plaintiffs objected.

On January 12, 2024, the trial court signed an amended judgment sustaining defendant's exceptions of no right of action, no cause of action, and prescription, and dismissing the suit with prejudice.[2]  Plaintiffs now appeal.

## DISCUSSION

In their first assignment of error, appellants argue that the persistent placement of the "No Trespassing" signs constituted a continuing trespass. They argue that the placing of the sign and tearing down of the Church building was proof of defendant's intent to take permanent possession of plaintiffs' property.  Appellants contend that a continuing trespass occurs where a defendant erects a structure or places an object upon the land of the plaintiff and fails to remove it.  Appellants state that they were not the ones required to move the sign, but that the law required that defendant remove the sign.

In their second assignment of error, appellants argue that the trial court erred in granting defendant's exception of no right of action.[3] Appellants state that they are members of the Church and the doctrine of virtual representation recognizes the right of a few persons to sue on behalf of themselves and all other persons similarly situated.  Appellants contend that Pastor Washington is the former pastor of the Church and a member of the board of trustees.  Therefore, he was an authorized officer under La.

---

[2] On August 3, 2023, a prior judgment was signed, but this court determined that the original judgment did not contain the proper decretal language and ordered the trial court to amend the judgment.

[3] Appellants' assignment of error and subheading refer to defendant's exception of no cause of action, but their argument relates to defendant's exception of no right of action.

C.C.P. art. 689 to bring suit on behalf of the Church. Appellants ask that this court reverse the trial court's judgment on defendant's exceptions of prescription and no right of action.

Appellee contends that the trial court was correct in sustaining its exception of prescription because plaintiffs' claims for the demolition of the Church sanctuary and removal of any movable property allegedly left at the building had prescribed on the face of the petition. Appellee also asserts that there exists no legal authority supporting plaintiffs' assertion that the placement of small, temporary "No Trespassing" signs constituted a continuing tort. Appellee states that plaintiffs failed to establish that Robinson placed the "No Trespassing" signs on the property itself, instead of on the Keatchie-Marshall Road right-of-way.

Appellee argues that plaintiffs were granted leave to amend their petition to cure the defects related to the exception of no right of action, but they failed to do so by asserting their claims on behalf of the Church, through its president or other authorized officer, as required by La. C.C.P. art. 689. They also did not name the Church as an unincorporated association. Appellee asks that this court affirm the trial court's judgment.

Plaintiffs brought claims of conversion for theft of the Church property, damage to immovable property for the destruction of the Church sanctuary, and trespass to immovable property against defendant for the placement of the "No Trespassing" signs. At the time plaintiffs instigated the suit, delictual actions were subject to a liberative prescription of one year. La. C.C.P. art. 3492. When damage is caused to immovable property, the one-year prescription commences to run from the day the owner of the

immovable acquired, or should have acquired, knowledge of the damage. La. C.C.P. art. 3493. Generally, the party asserting a peremptory exception of prescription bears the burden of proof; however, when the plaintiff's claim is prescribed on the face of the petition, the burden shifts to the plaintiff to establish that his or her claim has not prescribed. *Davas v. Saia*, 23-0090 (La. App. 4 Cir. 10/6/23), 376 So. 3d 288.

When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error-clearly wrong standard of review. *Bryant v. Dean Morris, LLC*, 54,657 (La. App. 2 Cir. 8/10/22), 345 So. 3d 483, *writ denied*, 22-01543 (La. 12/6/22), 351 So. 3d 366.

It is well settled in our law that conversion is a tort and governed by the one-year prescriptive period. *Id.*; *Jefferson v. Crowell*, 42,177 (La. App. 2 Cir. 5/9/07), 956 So. 2d 746; *Madden v. Madden,* 353 So. 2d 1079 (La. App. 2 Cir. 1977). The prescriptive period commences on the date the aggrieved party has actual or constructive knowledge of the facts indicating to a reasonable person that he or she is the victim of a tort. *Jefferson, supra.*

Constructive knowledge has been defined as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502; *Newsome v. City of Bastrop through Jones*, 51,752, (La. App. 2 Cir. 11/15/17), 245 So. 3d 248. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription. *Id.* In assessing

10

whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, the ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances. *Id.*

To recover in response to trespass, damages must be based on the result or the consequences of an injury flowing from the act of trespass. *Gen. Acc. Fire & Life Assur. Corp. v. Humble Oil & Ref. Co.*, 243 So. 2d 865 (La. App. 1 Cir. 1971). A trespasser is one who enters the premises without the permission of the occupier or without a legal right to do so. *Id.*

When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So. 3d 991. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage. *Id.*

The distinction between continuous and discontinuous operating causes was clarified by the Louisiana Supreme Court in *Crump v. Sabine River Authority,* 98-2326 (La. 6/29/99), 737 So. 2d 720. In that property damage case, a third party dug a canal on property owned by the river authority. The owner of the property over which the bayou used to flow filed suit alleging a continuing tort. The supreme court determined that the continued presence of the canal and the consequent unremitting diversion of

water from a bayou were the enduring ill effects arising from the single tortious act of digging the canal. The court decided that continuing tort theory did not apply. *Id.*

Therein, the supreme court explained that "[a] continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Id.* at p. 9, 737 So. 2d at 728. The court pointed out that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury." *Id.* at p. 11, 737 So. 2d at n. 7. The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts. *Hogg, supra.*

In *Hogg, supra*, the supreme court found that the migration of gasoline from formerly leaking underground storage tanks located on a neighboring property was not a continuing tort when the leaking tanks were replaced in 1997 and the plaintiffs did not file suit until 2007.

The *Hogg* court stated:

> In Louisiana, the concept of continuing tort finds its origins in trespass and nuisance cases. Under Louisiana law, a trespass can be continuous or it can terminate. A continuous trespass is a continuous tort; one where multiple acts of trespass have occurred and continue to occur; where the tortious conduct is ongoing, this gives rise to successive damages.… That situation, our courts have cautioned, is to be distinguished from a trespass which causes continuing injury by permanently changing the physical condition of the land. When a trespass which permanently changes the physical condition of the land is concluded, no additional causes of action accrue merely because the damage continues to exist or even progressively worsens. *Derbofen v. T.L. James & Co., Inc.*, 355 So. 2d 963, 968 (La. App. 4 Cir. 1977), *writ denied,* 357 So. 2d 1156 (inadvertent excavation of fill material from landowner's property to create lake extending over and onto landowner's property not a continuing trespass after dredging operation completed).

12

> Thus, contrary to plaintiffs' assertion in brief, all trespasses are
> not, by definition, continuous acts giving rise to successive
> damages. To determine whether a trespass is continuous, a
> court must engage in the same inquiry used to determine the
> existence of a continuing tort; i.e., the court must look to the
> operating cause of the injury sued upon and determine whether
> it is a continuous one giving rise to successive damages, or
> whether it is discontinuous and terminates, even though the
> damage persists and may progressively worsen.

*Hogg, supra*, at p. 16–17, 45 So. 3d at 1003–04 (internal citations omitted).

In *Labatut v. City of New Orleans*, 96-0981 (La. App. 4 Cir. 12/27/96), 686 So. 2d 1038, the plaintiff's house was damaged by fire; he moved to a neighboring residence and subsequently saw a crew demolishing his house and property by order of the City of New Orleans. In his pleadings, the plaintiff made claims for the demolition of his property but also alleged continuing trespass stating that the crew continued to destroy, misappropriate, and trespass upon his property for several days after the initial demolition. Plaintiff filed suit more than one year after the date of the initial demolition, but less than one year after the ensuing acts of trespass. *Id*.

The Fourth Circuit stated, "[A] continuing trespass occurs when the defendant erects a structure or places an object on another's land and fails to remove it." *Id.* at p. 3, 686 So. 2d 1040. The court found that the plaintiff's claims related to the initial demolition had prescribed, but not the acts of "independent trespass" that occurred on the days after the demolition. *Id*.

We were unable to find any jurisprudence stating whether the placement of a "No Trespassing" sign constitutes a continuous trespass.

Here, according to their petition, the members of the Church became aware that their sanctuary was demolished and property from the Church

13

building was removed on March 7, 2021. They did not file their petition until September 9, 2022, more than one year after they discovered the destroyed sanctuary. On the face of the petition, their claims for conversion and destruction of the Church building prescribed by the time plaintiffs filed suit. The trial court was not manifestly erroneous in sustaining defendant's exception of prescription on those claims.

Appellants next argue that the placement of the "No Trespassing" signs constituted a continuing trespass. We do not agree. Plaintiffs can only recover for an act of trespass if their damages were based on the result or the consequences of the injury flowing from the act of trespass. *See Gen. Acc. Fire & Life Assur. Corp. v. Humble Oil & Ref. Co., supra*. A trespasser is one who enters the premises without the permission of the occupier or without a legal right to do so. *Id*. The original act of alleged trespass here was the Farm entering the Church property without permission and purportedly taking Church property and demolishing the sanctuary. The conversion and destruction of immovable property stemmed from the Farm ostensibly entering the property without a legal right to do so, not from the placement of the "No Trespassing" signs. No injury or damage resulted from the placement of the signs because their placement was not overt, persistent, and ongoing acts as contemplated by *Crump, supra*, and *Hogg, supra*.

In *Hogg, supra*, the supreme court stated that to have a continuous trespass, the tortious conduct must be enduring, giving rise to successive damages. There was no successive damage from the placement of the "No Trespassing" signs. The conduct complained of and giving rise to the

14

damage in this case was discovered on March 7, 2021. No further damage came after that date.

The facts here can be contrasted with those in *Labatut, supra*, where the plaintiff complained about the initial destruction of his home, but also protested the continued destruction, misappropriation, and trespass upon his property that occurred for several days after the original demolition. The plaintiff claimed in his petition that additional damage was done to his property in the ensuing days after his home was torn down. Here, plaintiffs claim solely that the "No Trespassing" signs remained after they first discovered the state of the Church building, which does not amount to additional damage.

We find that there was no continuing tort here by the placement of the "No Trespassing" signs. Plaintiffs were granted leave by the trial court to amend their petition to cure the defects therein. They were unable to do so. The trial court was not manifestly erroneous in its ruling on the continuing trespass claim, finding that all of plaintiffs' claims prescribed and dismissing the suit with prejudice. Because we find merit in appellee's argument that appellant's action had prescribed, we pretermit consideration of the other assignment of error.

## CONCLUSION

The ruling of the trial court is affirmed. Costs of the appeal are assessed to appellants.

**AFFIRMED.**

15

**Stone, J., dissenting.**

I respectfully dissent. This court should reverse the trial court's ruling sustaining the defendant's ("Robinson Bros") exceptions of no right of action, no cause of action, and prescription, and dismissing plaintiffs' ("Church") petition with prejudice.

**Overview**

During a time in America where very few African-Americans were literate, Mary Evergreen Baptist Church (an unincorporated association) was established by its membership in 1882 and was located at 9889 Keatchie-Marshall Road in Caddo Parish, Louisiana.

The church sanctuary was constructed in 1923 more than 40 years after its founding. Nearly 100 years later, precious few, if any, members alive at the time of construction of the sanctuary were alive to participate in the 2022 case before us.

**Derivative Action**

The Appellants-Plaintiffs are Pastor Bobby Washington and 25 current and active members of the Church, many of whom are descendants of the founding members. As members of the Church, the Appellants-Plaintiffs argue, and I agree, that they are entitled to be bring an action on behalf of the unincorporated association pursuant to La. C. C. P. art. 611(A).

Were we to assume that the membership of the Church in 1882 was highly literate, and further assume that the membership would know to incorporate the Church, as a practical matter, it would not be until 1914 with

1

the admission of Charles Roberson (the first African American lawyer in north Louisiana), that those efforts could potentially materialize.

To deprive the current members of the Church the ability to speak on behalf of the Church is analogous to depriving patriots of their rights because their individual names were not enshrined in the U.S. Constitution.

**Continuing Tort**

The majority correctly states that the original trespass was Robinson Bros entering the Church property without permission, taking Church property and demolishing the sanctuary. This is the crux of the case. Attempts by Robinson Bros to prevent the Church and its parishioners (and rightful owners) from having access to the Church property constitutes a continuing tort, and placement of a "No Trespassing" ("NT sign") further amplifies this continuing tort. In fact, the NT sign is evidence of Robinson Bros intent.

Finally, the argument that the parishioners of any church who have been meeting in some form or fashion since 1882 are without the ability to come before a competent court of jurisdiction to redress their individual and collective grievances is particularly offensive and almost cruel. It flies in the face of decades of jurisprudence that stand for equal access to the courts.

Again, I respectfully dissent.